**The People of the State of Illinois, Plaintiffs-Appellees, v. Clarence Rohwedder, Defendant-Appellant.**

Gen. No. 66–9.

Fifth District.

January 4, 1967.

Cohn, Cohn & Korein, of East St. Louis, for appellant.

John M. Karns, Jr., State's Attorney of St. Clair County, of Belleville (James H. Bandy and John H. O'Connell, Assistant State's Attorneys, of counsel), for appellees.

MORAN, J.

Defendant-appellant, hereinafter referred to as defendant, and one Harry Tippett were tried jointly by a jury in the Circuit Court of St. Clair County, Illinois, for the crime of burglary. Tippett was acquitted. Defendant was convicted and sentenced to a term of not less than three nor more than seven years in prison.

█ Defendant first contends that the indictment was fatally defective because it was not signed by the foreman of the grand jury as required by Illinois Revised Statutes, chapter 38, section 111-3(b). The indictment was signed at the bottom of the first page by the State's Attorney of St. Clair County, Illinois, and endorsed "a true bill" on the reverse side by the foreman of the grand jury. People v. Faciano, 66 Ill App2d 431, 213 NE2d 587, and People v. Vlcek, 68 Ill App2d 178, 215 NE2d 673, hold that the endorsement on the back of the indictment as "a true bill" with the signature of the grand jury foreman thereto, was entirely proper and sufficient, although the signature of the State's Attorney, rather than that of the foreman of the grand jury, appeared on the face of the indictment. We agree with these decisions.

█ Defendant next contends that he is entitled to the benefit of his codefendant's acquittal and discharge since they were tried jointly. This same contention

212

was made in People v. Rogers, 16 Ill2d 175, 157 NE2d 28, wherein the court at page 183 said:

> "Defendant also contends that since he and Biggers were jointly indicted, they must be either jointly convicted or jointly acquitted, and that since the jury found Biggers not guilty and found defendant guilty, there was variance between the indictment and the proof. There is no merit to this contention. The acquittal of one of two jointly indicted defendants is no reason why the other defendant cannot be convicted."

The defendant also contends that he is entitled to a new trial because the Chief Judge of the Twentieth Circuit, without notice to the defendant or his attorney, summoned the jury into the courtroom during its deliberations and put the jury to inquiry.

This case had been assigned for trial to Judge Trafton Dennis of Harrisburg, Illinois. When the jury retired at about 11:30 a. m., to consider its verdict, the People and the defendants, through their respective counsel, stipulated that the jury should be permitted to deliberate until 9:00 p. m., before being discharged for inability to agree, and that a sealed verdict or verdicts could be received if they reached agreement before that time. After the jury had retired, Judge Dennis left for his home in Harrisburg, Illinois. About 4:30 p. m., the Chief Judge of the Twentieth Circuit caused the jury to be brought before him for inquiry. This was done in the absence of defendants and their attorneys, and without prior consultation with them.

The defendant filed a post-trial motion asking for a new trial because of the communication between the Chief Judge and the jury after the jury had retired to reach a verdict. A hearing was had on the motion for

a new trial, wherein the Chief Judge testified that he was Chief Judge on June 11, 1965, when the jury was deliberating in the case of People v. Tippett and Rohwedder; that he was in the courthouse and was aware that the jury was deliberating; that he called the trial judge on the telephone, reaching him at home and said, "This is Judge ———, and I understand that the jury is deliberating in the case that you have just concluded; if you want me to receive that verdict when they reach it, I will be very happy to do so." He said that to the best of his recollection, the trial judge said, "Go ahead, do that. The people are there. It can be announced in open court when it is read." A short time later he said to the bailiff, "Would you bring the jury down to the courtroom? I want to find out what progress has been made." The bailiff went up and told the jurors to come down to the courtroom. The Chief Judge was seated on the bench. He said, "I am not the judge that presided at the trial. However, do you need more time to deliberate?" The foreman arose and said, "Yes, we could use more time." "I said, 'All right, go back up to your jury room.'" He further testified that there was no discussion of the merits of the case and no instructions given concerning any issue of fact or law on the case; that the attorney for the defendant called him up and said, "How is the jury doing?" and he said, "Saul, a short time ago I brought them to the courtroom to find out the progress of the deliberations, whether or not there was any need to continue. I sent them back up there. They are still deliberating." Rohwedder's attorney then said, "I will be right up." "He made no objection to what I had done. When the verdict was reached, everyone was brought into the courtroom. Defendant and Mr. Cohn were there and I read the verdict, and to the best of my recollection, Mr. Cohn either polled the jury or waived it."

He further testified that he made no effort to call the defendants or their lawyers when he brought the jury into the courtroom; that when he talked to Rohwedder's attorney some time later, he wasn't quite sure whether the jurors had been brought down to the courtroom or not; that he asked Mr. Pierce, the bailiff, about it and Mr. Pierce said he did not remember the incident; that he thereupon went to the home of the jury foreman one evening and asked him, and the foreman said, "Yes, you brought us down. The bailiff brought us down in the courtroom. You asked us if we needed more time. I said we did. You then sent us upstairs immediately."

The bailiff then testified that he did not remember bringing the jury down during the afternoon of the trial, only after they had reached a verdict. He did not recall that the Chief Judge had told him to bring them down in the afternoon. He didn't think they were brought down. He did not remember saying after the trial that they were brought down, and if they were brought down, he did not remember what the trial judge said to them.

Rohwedder's attorney testified that he came to the courtroom upon learning that the judge had called the jury into the courtroom; that he chatted with the Chief Judge until 7:00 p. m., when the jury came in; that he made no objection or motion for a mistrial as there was no court reporter present.

In Crabtree v. Hagenbaugh, 23 Ill 349, after the jury had retired to consider their verdict, they sent for the judge who went to their room and talked to them about the subject of the instructions which had been given them. The court pointed out that the action of the judge was obviously without any improper motive and that the most that he did was to decline to explain the meaning of the written instructions which had been given to the jury; that they assumed that what was done by the

■■■■■■■■■■

judge did not influence the jury in their deliberations. The court said that independent of its effect upon the jury, the judgment should be reversed for the simple reason that such an interview did take place, saying:

> ". . . If, in this case, no harm was actually done, and for that reason the verdict is allowed to stand, we open the door to the inquiry in all such cases, as to whether the party has been injured by the interview. Such an inquiry should not be tolerated. The policy of the law requires that all of the proceedings of the court should be open and notorious, and in the presence of the party, so that if he is not satisfied with it, he may take exceptions to it in the mode pointed out by the law, and not be put to extraneous proof to show that an error has been committed in a secret proceeding, and, in fact, out of court."

In People v. Beck, 305 Ill 593, 137 NE 454, a case involving the prohibition laws of the 1920's, the jury sent a note to the trial judge inquiring as to the right to manufacture liquor for one's own use, prior to July 1, 1921. The judge, in the absence of the defendant and his counsel, told the jurors he could not instruct them orally, but read to them a written instruction. The Supreme Court held the instruction given was bad, but further ruled that "regardless of the question of the correctness of the instruction, the action of the court was error for which the judgment must be reversed," saying at page 456:

> "The defendant was entitled to a public trial by jury, in every part of which he had a right to participate, to be present at every stage of the proceedings, to know everything that was done, to make objections, and to take such action as he might think best for securing his rights and for his protection. The

law is well settled in this State that it is error for which a judgment will be reversed for a trial judge to hold any communication with a jury after their retirement to deliberate upon their verdict, except in open court."

The State contends that Crabtree v. Hagenbaugh, supra, and People v. Beck, supra, are no longer the law in Illinois; that the rule in Illinois regarding communications between jury and judge or jury and third persons is stated in People v. Brothers, 347 Ill 530, 180 NE 442, and in People v. Tilley, 411 Ill 473, 104 NE2d 499, wherein the court said at page 478:

". . . (J)udgments will not be reversed when it is apparent that no injury has resulted from a communication to the jury, either by the court or by third persons."

Assuming that the law is as the State contends, we are not convinced that no injury resulted from the communication between the judge and jury in this case. The Chief Judge testified that he called the jury down and asked them if they needed more time to deliberate. We believe that the jury would probably interpret this to mean that the judge thought it was about time that they brought in a verdict. Even though our Supreme Court has held it is not always reversible error for the court to communicate with the jury out of the presence of the defendant, it has always severely condemned the practice.

 The jury is isolated so it can conduct its deliberations in secret with fairness and justice to all parties. The trial courts must clearly understand that the rights of the State and the rights of the persons charged with crime can best be protected when the jury are left alone

to deliberate without coercion from anyone. We believe that the communication between the court and the jury in the present case deprived defendant Rohwedder of the fair and orderly trial that he was entitled to under our system of jurisprudence.

■ ■ Then, too, in People v. Mallett, 30 Ill2d 136, 195 NE2d 687, the court said at pages 141–142:

> ". . . A defendant in a criminal case has an absolute right to be personally present at all stages of his trial. (People v. Nelson, 18 Ill2d 313.) This right may be waived by the defendant but the attorney for the defendant has no power to waive this right on behalf of the defendant. (People v. Smith, 6 Ill2d 414.)"

■ We hold that the defendant, Clarence Rohwedder, had a right to be present when the court summoned the jury before it for inquiry, as this was a stage of his trial.

For the foregoing reasons the judgment of the Circuit Court of St. Clair County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

EBERSPACHER and GOLDENHERSH, JJ., concur.