**People of the State of Illinois, Plaintiff-Appellee, v. Curtis Hahn (Impleaded), Defendant-Appellant.**

**Gen. No. 50,144.**

First District, Second Division.

December 22, 1967.

BURKE, J., dissenting.

Walter H. Moses, Jr., and Ronald Charles Smith, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, James S. Veldman, and Oliver D. Ferguson, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

This is an appeal by the defendant, Curtis Hahn, from his conviction in a jury trial for the offense of burglary, for which he was sentenced to a term of not less than four (4) nor more than eight (8) years in the State Penitentiary. Subsequent to the return of the jury verdict, defendant made alternative motions for either judgment notwithstanding the verdict or a new trial, both of which were denied, and from which he brings this appeal.

Summarized, this case concerns itself with the commission of a burglary during the daylight hours of January 16, 1964, at the residence of the complainant, one Alexander D. Moser. The victimized premise was a first-

floor apartment in a building located at 6420 North Newgard Avenue in the City of Chicago, access to which had been gained by tampering with the rear door in Moser's absence. An immediate inventory of personal belongings conducted by Moser and his wife upon their discovery of the crime revealed numerous pieces of men's and ladies' jewelry, some assorted men's sportswear, a brown duffel bag, as well as several credit cards, to be missing. Subsequent police investigation led to the arrest and joint indictment of defendant and one Charles Randolph Fiala, the latter entering a plea of guilty to the charge.

Preliminary to trial, a hearing was conducted on defendant's motion to suppress certain evidence alleged to have been seized as a consequence of an unlawful search of defendant's apartment. At that hearing, Detective Joseph Nolan testified that on January 24, 1964, he and Detective Madden approached defendant's apartment at 505 West Belmont Avenue, where they knocked and announced their office. After some pause, defendant opened the door and consented to their entrance. Once inside the one-room apartment, Nolan stated that he observed in open view several credit cards atop a dresser, four of which visibly bore the name Alexander Moser. Questioned concerning his possession of the cards, defendant denied having any knowledge of them, and was then placed under arrest. A search of the room, over defendant's protests, produced a total of 18 such cards, some jewelry, assorted clothing, a BB gun and BBs, an ice pick as well as numerous unopened packages bearing shipping labels addressed to persons other than defendant, most of which were in various secluded locations. These items were all seized by the officer. In the interim, Detectives Casey and Spatz, who had accompanied Nolan but remained downstairs, discovered that suspect, Fiala, had also resided in the same building. A search of his vacant apartment suggested a hurried departure by him.

Testifying in his own behalf at the hearing, defendant asserted that four officers gained entrance to his apartment at gunpoint and under false pretense. He said the police handcuffed him, struck him when he denied knowing the whereabouts of Fiala, and ransacked the room. Defendant, however, admitted to his possession of the chattels seized and that he lied when telling the officers he knew nothing of Fiala. Thereupon, the court denied defendant's motion to suppress.

Moser, at the trial, testified that two days after the burglary, an Officer Muller arrived at the scene to investigate. Borrowing an ice pick from him, the witness stated that the officer demonstrated how the rear door may have been unlocked by insertion of the pick through a ½″ or ¾″ in diameter hole in the window immediately adjacent to the door. Moser stated that despite his long tenure in the apartment he had never noticed the hole, nor could he offer an explanation as to how it was caused. He had noticed, however, small splinters of glass on the window ledge just below the hole.

Thereafter, on January 26, 1964, Moser testified that he recognized a red and black shirt worn by defendant in a police lineup as his own, though conceding there were others identical to it in the store when it had been originally purchased. Moser admitted to his inability to personally identify defendant as he had observed no one in his apartment. The complainant informed the court that he had subsequently that day recovered some of his belongings (jewelry, clothing, duffel bag and credit cards) from among items in the possession of police authorities. Thereafter, over objection of counsel for defendant, Moser was asked:

"Q. . . . After your burglary, . . . did you receive bills for any items purchased with your stolen credit cards?

"A. Yes, sir.

"Q. Now, as specific as you possibly can be, would you tell us, please, the total amount in dollars of purchases made with your credit cards from the time they were taken from you until the time that you got them back?

"A. It was around 27—somewhere around 25 to $2700."

No effort was made, at any juncture, to introduce such bills into evidence.

The testimony of Officers Nolan and Madden that followed was essentially the same as that given by Nolan at the pretrial hearing and was, in all but one minor respect, corroborative. Both witnesses positively identified People's Exhibits Nos. 1 and 2 (ice pick and BB gun with BBs respectively) as those confiscated from defendant's apartment on January 24, 1964.

Coindictee Fiala, called as a State's witness, denied any participation in the actual burglary of the Moser residence, claiming to have misunderstood the indictment when entering his plea of guilty. He professed to have only been guilty of receiving a radio and two credit cards from defendant, with knowledge that they were stolen in the Moser burglary, and of using the credit cards to make some purchases.

On cross-examination, Fiala admitted that he had previously made a written statement (Defendant's Exhibit No. 1 for identification), while in a police lockup with defendant, wherein he stated that he had never participated in any burglaries with defendant, nor did he possess any knowledge of a burglary committed by defendant alone. The witness than proffered that some of the property, without describing its identity, found by the police in defendant's possession was stolen merchandise, given to him for storage during a three to four-day period preceding the eventual search and seizure as he (Fiala) prepared to take flight from the authorities for certain

371

burglaries he had committed. Continuing, Fiala denied that he had ever told a Frank Chakot, a fellow inmate at County Jail, that he had been promised leniency if he would testify against defendant and that defendant had nothing to do with the burglary. The witness further denied having ever apologized to defendant, in Chakot's presence, for his course of conduct in this regard.

On redirect examination, Fiala asserted that his prior statement was true with omissions only, reiterating that he had received some of the fruits of the Moser burglary from defendant. The witness explained that when he had signed the prior statement he was not in the same frame of mind that he was now. Fiala being excused, the court thereupon, over objection of counsel for defendant, admitted into evidence People's Exhibits Nos. 1 and 2.

Frank Chakot was the only witness testifying in behalf of defendant. He claimed to have heard Fiala apologize to defendant for implicating him in the burglary which he knew defendant had nothing to do with, explaining that he was going to "cop out" anyhow to get himself less time as per an agreement with the State's Attorney's Office. Thereinafter, defendant offered into evidence Fiala's written prior inconsistent statement, which after argument by opposing counsels on the subject, was denied by the court. None of the proceeds of the burglary were ever introduced into the record. This was the extent of the testimony adduced at the trial.

Defendant's theory of the case assigns as prejudicial error the introduction into evidence of People's Exhibit Nos. 1 and 2 (the ice pick, BB gun and BBs), Moser's testimony relating to the subsequent unlawful use of his credit cards, and the court's refusal to admit Fiala's prior inconsistent statement into the record. He further contends that the evidence failed to establish his guilt beyond a reasonable doubt. In response, the State's theory asserts the absence of prejudicial error in the trial as

372

well as the sufficiency of the evidence to sustain defendant's conviction.

■ Defendant's first contention relative to error in the admission of the ice pick, BB gun and BBs is without merit. Recent possession by an accused of instruments suitable for the commission of the offense, even though no claim is made that, in fact, those were the instruments used, has long been recognized as a relevant evidentiary consideration. People v. Stanton, 16 Ill2d 459, 158 NE2d 47 (1958); People v. Magby, 37 Ill2d 197, 226 NE2d 33 (1967). Here Moser, on the stand, related he had personally observed a demonstration (by Officer Muller), whereby access to his home was gained by insertion of an ice pick through a theretofore unnoticed hole in the window adjacent the door latch. While it has not been theorized exactly by what means the window fracture was occasioned, its size, character and recent origin evidenced by the glass splinters on the ledge were strongly suggestive of the use of a gun similar to that which was found in defendant's apartment. Inasmuch as defendant has not pursued his claim as to the unlawfulness of the seizure of these instruments, we feel People's Exhibit Nos. 1 and 2 were sufficiently connected to the offense in question to warrant their admission into evidence.

■ ■ The essence of the offense of burglary is the breaking and entering with the intent to commit a felony or theft. People v. Waller, 85 Ill App2d 55, 229 NE2d 298 (1967). As is typically the result of the clandestine nature of the crime, in the instant case there existed no direct evidence as to the act of unlawful entry. Accordingly, on the record before us, defendant's conviction could only have been predicated upon the rule which imposes an inference of guilt upon an accused found to be in recent, unexplained, and exclusive possession of the fruits of the burglary. People v. Taylor, 25 Ill2d 79, 182 NE2d 654 (1962). Caution should be taken, as no doubt

did the court in Taylor, to not employ these terms loosely nor tread lightly on their respective meanings.

Examined as it pertains to the testimony and physical evidence offered below, we find that the imposition of that inference involves a much closer question than a reading of the narrative might first indicate. The principle is founded in recent possession of the bounty of the offense. None of the alleged proceeds of the burglary were ever introduced into evidence here, nor were they found in defendant's possession until eight days after the fact. As again noted in the Taylor case, the nature of the goods themselves were, for the most part, of a character conducive to ease of disposition and movement, thereby militating against the raising of an inference of guilt. Notwithstanding the conflicting testimony as to whether defendant consented to the entry of the officers into his abode, he did not, during the considerable pause preceding their entry, seize upon the opportunity to conceal the credit cards from open view.

Fiala, on the other hand, did in fact testify to having received some of the Moser property from defendant. Similarly, defendant did acknowledge his familiarity with Fiala and admitted to his possession of the goods seized from his apartment. Particularly significant in this regard were the prior inconsistent statements and actions of Fiala who claimed to have entered his plea, by counsel, only upon his alleged misapprehension of the nature of the charge in the indictment. Just to what extent the jury accepted his impeaching concession to the prior inconsistent statement was susceptible of varying connotations, as the witness vacillated considerably.

Fiala admitted to his prior writing only to the extent that he had stated that he did not commit a burglary with defendant, nor did he, as such, have any knowledge of a burglary committed by defendant alone, conceding that certain unspecified items found in defendant's possession had, in fact, been given to him by Fiala. Defendant, con-

374

versely, proposed that Fiala had unequivocally asserted his innocence of the charge, offering the Chakot testimony in support and explanation of Fiala's change of position. Accordingly, much more than peripheral considerations hung in the balance. The issue bore directly upon the credibility attached by the jury to Fiala's account of possession of the goods, more specifically to defendant's "unexplained and exclusive possession" thereof so as to either raise or destroy an inference of his guilt.

■ The court below, and the State now on appeal, are of the position that once the declarant admits to the truth of his prior inconsistent statement, that statement is offered solely for its cumulative or repetitious effect upon the jury and hence is properly denied. Aside from the fact that the rule is a creature of the civil law, the State fails to recognize that Fiala denied the veracity of his prior statement in certain inarticulated respects. The exact nature, extent and import of the admissions inherent in the writing were, we feel, of particular relevance to defendant's cause, the introduction of which should not have been foreclosed. See 3 Wigmore on Evidence, 3rd ed, § 1037, p 723, as adopted in People v. Williams, 22 Ill2d 498, 177 NE2d 100 (1961). Cf. Esderts v. Chicago, R. I. & P. R. Co., 76 Ill App2d 210, 222 NE2d 117 (1966); People v. Jarrett, 57 Ill App2d 169, 206 NE2d 835 (1965). We feel defendant was prejudiced by being compelled to limit his impeachment to its piecemeal and thus unemphatic effect.

■ Moreover, any misgivings which may have existed relative to the absence of gravity in that error, were eradicated by the compounding prejudicial remarks deliberately elicited from Moser in regard to the subsequent use of his credit cards to make purchases. We do not quarrel with, nor choose to ignore, the rule which has long permitted incidental evidence of another offense to be admitted, if it tends to prove the crime charged.

Stated in various ways, that rule approves of the admission into evidence of otherwise inadmissible testimony regarding the commission of another and unrelated crime, if its tendency is to establish a design, motive, the defendant's identity, or his proximity in time or place to the principal offense. People v. Tranowski, 20 Ill2d 11, 169 NE2d 347 (1960).

Moser's testimony patently amounted to evidence of the totally unrelated offense of theft by deception, a violation of section 16-1(b) of our Criminal Code. (Our statute on Deceptive Practices, section 17-1 of the Criminal Code, has since the date of trial been twice amended (SB 742, effective June 18, 1965 and HB 2282, effective September 5, 1967) so as to treat specifically the subject of credit card abuse and make it a violation of the Act.) Yet the State argues the absence of error, citing among other cases, People v. Ostrand, 35 Ill2d 520, 221 NE2d 499 (1966) and People v. Shockey, 66 Ill App2d 245, 213 NE2d 107 (1966), which, when taken in this conjunction, would appear to be persuasive of a contrary conclusion. Both cases (an armed robbery and burglary respectively), dealt with similar assignments of error to testimony which related to the writing of bad checks, likewise a deceptive practice (although in Shockey the offense amounted to a forgery as well). Particularly significant however, and unlike the case at bar, in both Ostrand and Shockey the testimony of the unrelated crime was sufficiently definitive so as to identify and positively link the accused with the act of deceptive practice. Clearly then, in those instances, the evidence fell within the aforementioned realm of application of the rule.

Here, there having been submitted nothing which would have placed defendant in proximity to the burglary, Moser's testimony could have, at best, been offered in support of a motive for the burglary. The distinguishing factor, however, is that by a compilation of the record narrative, and in absence of the production of any signed

376

bills alleged to have been received by Moser on the credit cards, there was a total failure to link defendant to the crime. Accordingly, the offer tended to prove nothing, but rather, when coupled with defendant's admitted possession of the cards and varied chattels, created the prejudicial inference that he had made the unlawful purchases. People v. Friedman, 383 Ill 193, 48 NE2d 950 (1943); People v. Brooks, 340 Ill 74, 172 NE 29 (1930); Schultz v. People, 210 Ill 196, 71 NE 405 (1904).

 There having been no admonition, nor cautionary instruction on the subject, we cannot at all be certain, again in absence of some link, that the relative brevity of the remarks on the amounts charged to the credit cards, and Fiala's admission to having used two cards to make purchases, operated, in any way, to mitigate the adverse influence such comments had upon the jury.

For the above reasons, the judgment is reversed and the cause remanded for a new trial.

Judgment reversed and remanded for new trial.

McNAMARA, J., concurs.

BURKE, J., dissenting:

There is no dispute that the Moser apartment was burglarized and that various items of personal property and credit cards were taken. A few days after the burglary the defendant was arrested in his apartment on Belmont Avenue, Chicago. At this time two Chicago Police Officers took 18 credit cards in the name of Moser and an assortment of other items. The defendant offered no explanation for the presence of the Moser credit cards, which were in plain view in his one-room apartment. A codefendant, Charles Fiala, testified for the People that he was arrested with two of the Moser credit cards in his possession which he had received from defendant and that he, Fiala, had used these cards to

make purchases. This testimony was admitted without objection. The fact that Fiala had some of the stolen credit cards in his possession did not mitigate against the guilt of defendant. See People v. Moore, 76 Ill App2d 326, 222 NE2d 95. The evidence of defendant's recent possession of goods stolen from the Moser apartment, the testimony that defendant had given some of these items to another and his failure to offer any explanation as to how it came to pass that this loot was in his room, strongly supports the verdict. He was proven guilty beyond a reasonable doubt.

In my opinion the admission into evidence of testimony about the use of credit cards subsequent to the burglary was not prejudicial error. The effect of the testimony on this subject was to prove that after the burglary the credit cards were outside the possession and control of Mr. Moser and in fact had neither been lost nor mislaid. The brief allusion to another crime, that of obtaining property by false pretenses, was incidental to this proof. No part of this testimony linked the defendant specifically to any crime other than that for which he was indicted. Incidental evidence of another offense is admissible if it tends to prove the crime charged. People v. Ostrand, 35 Ill2d 520, 221 NE2d 499; People v. Speice, 23 Ill2d 40, 177 NE2d 233. Charles Fiala testified that defendant had given him two credit cards bearing the name Alexander Moser which he, Fiala, had used to make purchases. This testimony was admitted without objection. While the admission of Mr. Moser's testimony was proper, the admission without objection of the corresponding testimony of Fiala precludes the defendant from raising this issue on appeal. People v. Frenchwood, 28 Ill2d 139, 190 NE2d 767; People v. Allen, 17 Ill2d 55, 160 NE2d 818.

The refusal of the trial judge to admit the prior contradictory written statement of Fiala did not constitute prejudicial error. Fiala was cross-examined extensively by defense counsel concerning his oral and written state-

ments prior to the trial in which he disclaimed that defendant had any connection with the burglary. During cross-examination Fiala testified that he had written the statement in the County Jail; on redirect examination he testified he made the writing in the bullpen or lockup as opposed to a cell in the County Jail. Defendant contends that the refusal to admit the writing into evidence was error so prejudicial as to require reversal. The People concede that under the doctrine of People v. Williams, 22 Ill2d 498, 504, 177 NE2d 100, a prior contradictory writing by a witness is admissible into evidence for the purpose of emphasizing its impeaching character even where the witness admits having made such a statement. As the previous written statement of Fiala was fully explored in the examination and cross-examination the defendant Hahn was not prejudiced in the instant case.

Two lines of cases exist on the question of whether a party has a right to have a witness' prior inconsistent statement introduced into evidence for impeachment purposes where the witness admits having made the statement. One line finds support in the 1893 case of Atchison, T. & S. F. R. Co. v. Feehan, 149 Ill 202, 36 NE 1036, and the other in the case of Plotkin v. Winkler, 323 Ill App 181, 55 NE2d 545. In Feehan the court said, at page 215: "In this case, the witness having admitted making the previous contradictory statement, no further proof of that fact was necessary, and the defendant was in no degree prejudiced by the exclusion of the witness' testimony. . . ." The Feehan rule was followed in Swift & Co. v. Madden, 165 Ill 41, 45 NE 979; Illinois Cent. R. Co. v. Wade, 206 Ill 523, 69 NE 565; Chicago & E. I. Ry. Co. v. Crose, 214 Ill 602, 73 NE 865; Kooyumjian v. Stevens, 10 Ill App2d 378, 135 NE2d 146 and Rogers v. Gehrke, 77 Ill App2d 343, 222 NE2d 351. Plotkin v. Winkler, 323 Ill App 181, 55 NE2d 545, holds that it was error not to allow a prior inconsistent statement into evidence. The Williams case has been followed in People

v. Dixon, 28 Ill2d 122, 190 NE2d 793, and People v. Jarrett, 57 Ill App2d 169, 206 NE2d 835, without comment in either case. The most recent case contrary to the Feehan line appears to be Esderts v. Chicago, R. I. & P. R. Co., 76 Ill App2d 210, 222 NE2d 117, which holds that the trial court properly allowed three inconsistent statements into evidence. The witness admitted his signatures on all three statements, but denied the contents of two of them. As to the third statement, it does not appear that the witness admitted, denied or had no knowledge of the matters therein. The Feehan rule should be applied to the case at bar as Fiala testified that he previously stated defendant had nothing to do with the burglary and that the statement was reduced to writing. He changed his story on the stand in an apparent attempt to explain what he meant by his earlier statement, by saying that he did not participate in the burglary and consequently could not say whether defendant committed the burglary or not, and that he had "no knowledge of any burglaries defendant committed as such." The jury was fully informed of the previous statement made by Fiala. The contradictions between the testimony and the written statement were emphasized in the examination and cross-examination of Fiala. The defendant was not prejudiced by the ruling of the trial judge that it was not necessary to a fair trial for the defendant, that any contradictions be further emphasized by the introduction of the written statement. There is no complaint by the defendant of the refusal to give any tendered instruction or of the giving of an erroneous instruction.

The People presented a strong case showing the guilt of the defendant beyond a reasonable doubt and the judgment should be affirmed.