THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROGER S. FRIDAY, Defendant-Appellant.

(No. 71-327;

Second District—June 6, 1973.

Paul Bradley, of Defender Project, of Chicago, for appellant.

William R. Ketcham, State's Attorney, of Geneva, (Leo Wotan, Jr., and W. Ben Morgan, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This is a companion case to *People v. Iverson*, (1972), 9 Ill.App.3d 706, the defendant in the instant case involving the same armed robbery therein described.

The defendant herein was indicted for armed robbery, found guilty by a jury and sentenced to 15-35 years in the Illinois State Penitentiary. The defendant was on parole at the time of the instant offense and the sentence herein was ordered to be served consecutively to the prior sentence for which he had been paroled. While the facts of the armed robbery herein are identical to those set forth by us in *Iverson*, a brief resume is necessary because of the contentions of the defendant herein. At the outset, two of the issues raised in *Iverson* are raised here. The first is the defendant contends he was not proven guilty beyond a reasonable doubt, and the other contention raised in *Iverson* was the giving of the *Allen* type instruction with other instructions prior to the jury's deliberation.

■■ We hereby reaffirm our ruling in *Iverson* that the giving of the

*Allen* instruction as part of the original series in this case and in the *Iverson* case was not prejudicial error.

With regard to the reasonable doubt question we find that the evidence herein clearly shows the defendant guilty beyond a reasonable doubt as we did in *Iverson*.

It appears that three men entered the home of Mrs. La Verne Garcia in Elgin, Illinois, about 10:00 o'clock in the evening of January 9, 1971. Two of the men were armed and the other carried a bag for the loot. Mrs. Garcia's sister and father were also present in the house but were asleep. Lance Sherwood, the eleven-year-old grandson of Mrs. Garcia, was with her in the kitchen. The men took Mrs. Garcia and her grandson, Lance Sherwood, upstairs where they tied them all up with tape. After taking the rings off the fingers of the women they then covered them with a blanket or sheet and proceeded to ransack the house. Mrs. Garcia testified they obtained about $20,000. Mrs. Garcia untied herself, attempted to use the phone, but as the line had been cut, went down to the next block and called the police and her husband. Lance Sherwood identified Roger Friday as the man who came to the door with an automatic pistol and grabbed him. Mrs. Garcia was not able to identify Friday. One of the three men, subsequently identified as Robert Soule, an accomplice, testified for the State. The State had agreed to recommend a sentence of 2-5 years if Soule testified, and this was brought out to the jury. Soule identified Friday as being one of the four men involved in the robbery. His testimony was positive and credible.

The instant case differs slightly from that of *Iverson* in that one Judy Reaska, a former girl friend of Roger Friday, also testified for the State. Her testimony in substance was that the defendant had told her that he was going to commit a robbery in Elgin together with Gary Iverson, Robert Soule, and two other men. She was residing in Streator, Illinois, on the night in question. Roger Friday left Streator with Gary Iverson about 7:30 in the evening in Iverson's Cadillac. She testified that Roger Friday, on the following Sunday, told her that he had robbed a woman, a small boy, and an elderly couple, and obtained a fur, money and jewelry. She further stated that he told her the victims were not American. It was brought out before the jury that she was in protective custody of the State's Attorney and had been arrested for wearing a coat stolen in Streator. Soule's testimony was in detail as to the trip from Streator to Elgin with the defendant, Roger Friday, and Gary Iverson, where they met Ollie Burns and Thurman Stephens about 9:15 in the evening. No useful purpose would be served in detailing Soule's complete testimony as to what took place in the Garcia home except that Soule had cut the telephone line, that Stephens remained in the car,

and that Friday, Soule and Iverson went into the Garcia house. They then signaled Stephens with a flashlight and he went into the house. The State contends that the testimony of the twelve-year-old boy, together with that of the accomplice of the defendant, and that of his girl friend to whom he had explained the whole robbery, was more than sufficient to prove his guilt beyond a reasonable doubt. We agree.

■■ The defendant contends that the court erred in giving Federal Instruction 6.01—3 defining reasonable doubt, as the court's instruction. In support of this contention he has cited *People v. Cagle* (1969), 41 Ill.2d 528, 244 N.E.2d 200. The courts of Illinois have held that it is not necessary or desirable to give an instruction on reasonable doubt. However, the instruction listed in *Cagle* differs materially from the somewhat simple instruction given in the instant case. In *Cagle* the court said at page 536:

> "This court has repeatedly held that the legal concept of 'reasonable doubt' needs no definition, and that where an involved instruction on that concept is given it may be deemed prejudicial error. [Citations.]

> \* \* \*

> It is patent that the controversial instruction No. 2 included not only an elaborate definition of reasonable doubt, but it also implied that the law requires that an acquittal be justified in violation of the elementary precept of our jurisprudence that a man is presumed innocent until proved guilty beyond a reasonable doubt."

■■ While an instruction on reasonable doubt should not be given, we find that the instruction given here was not involved or controversial and in no way prejudiced the rights of the defendant.

The court likewise gave Federal Instruction 6.07 on accomplice testimony dealing with the testimony of Robert Soule. Both the defendant and the State had tendered IPI Instruction 3.17. Both the State and defense counsel agreed to the withdrawal of IPI accomplice instruction IPI 3.17 and the use of the court's Federal Instruction 6.07 on accomplice. In this court's opinion it is highly desirable that the Illinois instruction be given, but we find nothing in the Federal instruction agreed to by counsel for both the State and the defendant that would prejudice the rights of the defendant in any way.

Defendant also contends that the Judge himself was prejudiced by his conduct of the trial. In support of this contention he alleges that the *voir dire* examination of the prospective jurors was prejudicial and has cited the following:

"Court:

Q. You have no quarrel with the law that makes it a criminal offense for someone to commit an armed robbery?

A. No, Your Honor.

Q. You appreciate as the defendant is seated here in open court that presumption rests and abides with him throughout the trial, that he is presumed to be innocent?

A. Yes, Your Honor.

Q. You appreciate that that is a humane provision of our law for the benefit of all innocent people, but not, in fact, to aid one who is guilty to escape his just punishment?"

■■ This court finds no error in these questions. It is the law and if anything, would benefit rather than prejudice the rights of the defendant. Another question asked by the court in the *voir dire* examination was:

"Q. The defendant is presumed to be innocent as he is seated here and that is *for the benefit of all criminals,* but not, in fact, to aid one who is guilty to escape his just punishment. You appreciate that? [Emphasis added.]

A. Yes."

This is doubtless an inadvertent misstatement by the court in his choice of words, but we do not believe that it was of sufficient import to constitute prejudicial error, particularly in view of the fact that this was in the *voir dire* examination.

■■ The next allegation of error by the defendant herein was that the court erred in permitting Judy Reaska to testify as the court's witness. The court explained that to the jury as follows:

"THE COURT: Ladies and Gentlemen of the jury, it has been called to the Court's attention that the next witness has been a girl friend of the defendant. I don't know whether they were engaged or whether they just lived together.

But request has been made to call her as the Court's witness. The defendant has objected. The objection is overruled. The court will call this next witness as the Court's witness. We are interested in ascertaining the truth of the facts."

Judy Reaska was then called and testified as indicated above. It is to be specifically noted that the defense counsel in his cross-examination brought out in detail that Judy Reaska was apprehended by the police in a store in Streator for wearing a stolen coat. He further brought out that she was not arrested but taken into the custody of a police officer, and she then told the police the facts involved in the offense charged herein. He further brought out that she was not prosecuted for the tak-

ing of the coat and that Judy Reaska had been in the protective custody of the State's Attorney and furnished money and care, including her transportation to the trial. Whether or not she was called as the court's witness is immaterial. Her interest in the proceeding was disclosed in detail to the jury. We therefore find that the comments of the court did not constitute prejudicial error.

■■ The defendant contends that he was denied effective assistance of counsel. At the conclusion of the trial the defendant was queried by the court out of the presence of the jury as to whether he was satisfied with the way defense counsel had tried his case, and if he had any fault to find with the way counsel handled his defense. The defendant replied that he had not. Defendant further said "I have no complaints." In support of the alleged ineffective assistance of counsel, appellate counsel suggests that trial counsel should have asked for a determination of Friday's competency to stand trial. Ill. Rev. Stat. 1969, ch. 38, sec. 104—2 dealing with the competency of a defendant provides:

> "(c) The burden of going forward with evidence of the defendant's incompetency shall be on the party, if any, requesting that determination."

Defendant was previously given a psychiatric examination prior to trial in the former case in which he was on parole at the time of the commission of the instant offense. The psychiatrist there found no psychosis. There was no indication to the defendant's counsel that he was incompetent. The record discloses throughout that the defendant was well represented by counsel. In *People v. Williams* (1970), 47 Ill.2d 239, 265 N.E.2d 107, the defendant contended that trial counsel was incompetent. After determination there that the factual situation presented very little in defense possibilities, Justice Schaefer stated at page 241:

> "* * * A court appointment to represent an indigent defendant does not endow an attorney with the ability to perform miracles, nor is he to be branded as incompetent because the defendant he represented was not permitted to plead guilty to a lesser charge."

■■ The last argument presented in this appeal is that the sentence imposed herein should run concurrently with any previous sentence. Indirectly, this would somewhat put a premium upon the commission of offenses by parolees. If a parolee were to commit an offense where the penalty is no greater than that for which he was paroled, he would receive no additional punishment for the second offense.

■■ The defendant was on parole under a sentence of 18 months to 7 years at the time of the commission of the instant offense. The imposi-

tion of 15-35 years additional consecutive sentence is, in fact, excessive. Accordingly, by virtue of the authority granted to us by Supreme Court Rule 615 (Ill. Rev. Stat. 1969, ch. 110A, sec. 615(b)(4)), we reduce the consecutive sentence to 5-to-12 years. Judgment of the trial court is affirmed. Sentence modified as indicated herein.

Affirmed. Sentence modified.

ABRAHAMSON and SEIDENFELD, JJ., concur.