THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DOUGLAS ROGERS, Defendant-Appellant.

(No. 73-5; )

Fifth District—October 18, 1974.

Robert E. Farrell, Richard E. Cunningham, and Timothy F. Flynn, all of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Clyde L. Kuehn, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a judgment entered by the circuit court of St. Clair County, on a jury verdict, against the defendant, Douglas Rogers, on three counts of armed robbery and the imposition of three concurrent sentences of 10 to 15 years in the penitentiary.

In this appeal the defendant raises six allegations of error: (1) that he was denied the effective assistance of counsel; (2) that he was not proven guilty beyond a reasonable doubt; (3) that the trial court erred in admitting the testimony of two policemen; (4) that the trial court erred in communicating privately with the jury; (5) that the trial court erred in imposing three sentences for alleged offenses arising from the same conduct; and (6) that the sentences imposed were excessive.

■■ The defendant's first contention is that he was denied due process of law due to the incompetency of his appointed counsel. It is, of course, the duty of the trial court to see that counsel assigned by it has sufficient ability and experience to fairly represent the defendant, present his defense and to protect him from undue oppression. (*People v. Blevins* (1911), 251 Ill. 381, 96 N.E. 214.) Although a defendant is entitled to a fair trial, his attorney is not expected, nor does due process require that he, be infallible. It is only where the defendant demonstrates "actual incompetence of counsel as reflected by the manner of carrying out his duties as a trial attorney and * * * subsequent prejudice therefrom without which the outcome would probably have been different" that the constitutional requirement of adequate representation will demand reversal. *People v. Teague* (1973), 15 Ill.App.3d 479, 305 N.E.2d 80, 87. See also *People v. Gill* (1973), 54 Ill.2d 357, 297 N.E.2d 135; *People v. Goerger* (1972), 52 Ill.2d 403, 288 N.E.2d 416; *People v. Dudley* (1970), 46 Ill.2d 305, 263 N.E.2d 1.

■■ The first alleged instance of incompetency of counsel is the defense attorney's failure to request the court to order that all witnesses be kept separated. Prior to the trial's commencement, the defense counsel did move that all witnesses be excluded from the courtroom. The defendant contends that his attorney should have taken the additional precaution of moving for the separation of witnesses. However, the defendant fails to allege, and we are unable to find, any unique circumstances which demonstrate a particular need for the separation of witnesses in the instant case. In the absence of such an allegation or finding we cannot say that the defense counsel's failure to make such a request manifested his incompetence.

■■ The defendant also alleges that the record "reveals confused and uninformed questioning" by defense counsel during cross-examination of the State's witnesses. The record does not substantiate that claim. Moreover, "a review of appointed counsel's competency does not extend to those areas involving the exercise of judgment, discretion, or trial tactics." (*People v. Witherspoon* (1973), 55 Ill.2d 18, 302 N.E.2d 3, 5.) The extent and manner of a defense counsel's cross-examination of the State's witnesses will not be subjected to the scrutiny of the reviewing court where, as in the instant case, the defense counsel's action or inaction involves the exercise of his "judgment, discretion, or trial tactics."

■■ The final alleged instance of incompetency is that defense counsel failed to question Mrs. Verdin Hesterberg, a victim of the alleged offense, about the possibility of an improper identification procedure. Assuming *ad arguendo* that the identification procedure was tainted *and* that counsel's failure to develop this area demonstrated his incompetence the defendant was not prejudiced thereby and the conviction need not be reversed. Mrs. Hesterberg's testimony reveals that she had an excellent opportunity to view the perpetrators during the commission of the alleged offense. It is likely, therefore, that even if an improper identification procedure had been employed, Mrs. Hesterberg's in-court identification had an origin independent of that procedure, and under such circumstances, the in-court identification need not be suppressed. (*People v. Rodgers* (1972), 53 Ill.2d 207, 290 N.E.2d 251.) In any event there were two other prosecution witnesses who made a positive identification of the defendant at the trial. Hence, even if Mrs. Hesterberg's identification testimony had been suppressed in its entirety, we cannot say that the outcome of the trial would probably have been different. Without such a determination defendant could not have been prejudiced by the actions of his appointed counsel and, therefore, we will not reverse the defendant's conviction on the ground that defendant's counsel was incompetent.

■■ The defendant also contends that he was not proven guilty beyond a reasonable doubt because the conviction rests upon identification testimony that is vague and uncertain. The general rule is that the sufficiency of eyewitness identification is a matter for determination by the trier of fact, and a reversal will not be warranted unless the testimony is so unsatisfactory as to leave a reasonable doubt as to the guilt of the accused. (*People v. Williams* (1972), 52 Ill.2d 455, 288 N.E. 2d 406; *People v. Del Genio* (1973), 10 Ill.App.3d 437, 294 N.E.2d 78; *People v. Hill* (1972), 3 Ill.App.3d 694, 279 N.E.2d 497.) Testimony of a single eyewitness is sufficient to establish guilt beyond a reasonable doubt provided such witness had an ample opportunity to observe the defendant and such witness is credible. *People v. Guyton* (1972), 53 Ill. 2d 114, 290 N.E.2d 209; *People v. Stringer* (1972), 52 Ill.2d 564, 289 N.E.2d 631; *People v. Savage* (1973), 12 Ill.App.3d 734, 298 N.E.2d 758.

In the instant case three eyewitnesses positively identified the defendant at the trial. Each of the witnesses had an ample opportunity to observe the defendant during the commission of the alleged offenses. The record reveals that the store in which the alleged offenses occurred was well lighted; that the defendant was in close proximity to the witnesses; and that each of the witnesses had sufficient time to observe the defendant.

The defendant contends that eyewitness identifications were doubtful, vague and uncertain since the witnesses could not recall whether the defendant had worn glasses, a mustache, or a beard. It is well established that minor discrepancies in the testimony of an eyewitness do not destroy credibility and are for the trier of fact to weigh in its deliberations. (*People v. Del Genio* (1973), 10 Ill.App.3d 437, 294 N.E.2d 78; *People v. Willis* (1970), 126 Ill.App.2d 348, 261 N.E.2d 723.) Where identifications testimony is positive, as in the instant case, precise accuracy in describing facial characteristics of a defendant is not necessary. (*People v. Miller* (1964), 30 Ill.2d 110, 195 N.E.2d 694; *People v. Carroll* (1973), 12 Ill.App.3d 869, 299 N.E.2d 134; *People v. Taylor* (1972), 8 Ill.App.3d 727, 290 N.E.2d 342.) We, therefore, find that the identification testimony of the three witnesses was clear, convincing and credible and that the defendant was proven guilty beyond a reasonable doubt.

■■ Next, the defendant contends that the court erred in admitting the testimony of two East St. Louis policemen, Lawrence Brewer and Emanuel Farmer. Lawrence Brewer testified that he placed the defendant in custody on March 30, 1972. Defense counsel objected to any further testimony concerning the arrest on the ground that it had no bearing on the alleged offenses. The objection was overruled, and Brewer was then asked whether the defendant was taken into custody as a

suspect in the instant case. Defense counsel again objected and asked that a continuing objection be noted in the record. The objection was overruled. When Brewer was asked if he knew who lived in the residence at which the defendant was arrested, defense counsel again objected and requested that his continuing objection be shown. The trial court responded that the objection was overruled but that counsel's continuing objection would be shown. Brewer then testified that the defendant had been living with Ella Smith, his girlfriend. Defense counsel objected, claiming that the testimony was highly prejudicial, but the prosecutor said that he would "attempt to connect it up." Brewer then testified that Ella Smith owned a blue 1966 Chevrolet with a black vinyl top.

Officer Farmer testified that on April 1, 1972, he dusted Ella Smith's blue 1966 Chevrolet for fingerprints. It was his opinion that some of the prints lifted from that car matched those of the defendant. The defendant did not object to officer Farmer's testimony.

The prosecutor's attempt to connect the preceding evidence was based upon the testimony of the witness Philip Reinecker. He testified that he saw three men running from the scene of the alleged offenses "in a suspicious manner" on March 29, 1972, the date of the alleged offenses. He further testified that the men ran down an alley and got into a blue car with a black vinyl top. The witness did not know the make or the license number of the car.

■■ "The test of the admissibility of evidence is whether it fairly tends to prove the particular offense charged, and any circumstances may be put into evidence which tend to make the proposition at issue more or less probable." (*People v. Peter* (1973), 55 Ill.2d 443, 559, 303 N.E.2d 398, 408. See also *People v. Rodgers* (1972), 53 Ill.2d 207, 290 N.E.2d 251; *People v. Nemke* (1970), 46 Ill.2d 49, 263 N.E.2d 97.) Proof with respect to the opportunity to execute an act is admissible to raise or negate an inference as to its performance by the person charged with its commission. Thus, recent possession by the accused of instruments suitable for the commission of the offenses, even though no claim is made that, in fact, those were the instruments used, is a relevant evidentiary consideration. *People v. Hahn* (1967), 90 Ill.App.2d 367, 234 N.E.2d 142.

In the instant case, the testimony that the defendant lived with Ella Smith, that Ella Smith owned a blue car with a black vinyl top and that the defendant's fingerprints were found therein tends to show that the defendant did have access to, and had been in, a car which was similar to the car which was seen by an eyewitness fleeing the scene of the alleged offenses. We find that this evidence was properly admitted since the total of the evidence presented in this respect would justify reasonable men

in concluding that the existence of the ultimate fact, *i.e.*, that the defendant committed the alleged offenses, is more probable than its nonexistence.

■■ The defendant's next contention is that the trial court erred in communicating with the jury outside the presence of the defendant. The defendant had alleged in a post-trial motion that the trial court had erred in ordering the continuation of jury deliberations notwithstanding the fact that the jury had announced on two occasions that they could not reach a unanimous verdict. In defense counsel's oral argument on the motion, he alleged that the jury had deliberated from 10:30 A.M. to 5:30 P.M. on the day in question, that the jury foreman informed the court on two occasions during the afternoon, that the jury could not reach an unanimous verdict and that on each occasion the court instructed the jury to deliberate further. The trial judge stated that the jury did not report directly to him at any time during its deliberations but that the jury reported to the bailiff, who in turn reported to the judge. In denying the post-trial motion, the court stated:

> "* * * On this question about the jury and improper or undue pressure, I do not feel there. was any and as I indicated earlier there was no contact between the court and the jury. the [*sic*] only contact was that the bailiff reported to me in Chambers that on one occasion they were 9 to 3 and in another occasion they were 10 to 2 and on each of those instances I told the bailiff to ask the foreman if they wished to deliberate further and on each of those instances they did go back and take another vote and this is what he reported to me. There was no contact between the jury and myself or anyone else to indicate any undue pressure. * * *"

■■ It is well established that it is generally improper for the trial judge to communicate with the jury outside the presence of the defendant and his attorney. (*People v. Longstreet* (1971), 2 Ill.App.3d 556, 276 N.E.2d 825.) It is, however, equally well established, that a jury verdict will not be set aside because of an unauthorized communication with the jury unless the defendant demonstrates that he was prejudiced. *People ex rel. Walker v. Pate* (1973), 53 Ill.2d 485, 292 N.E.2d 387; *People v. Tobe* (1971), 49 Ill.2d 538, 276 N.E.2d 294; *People v. Canaday* (1971), 49 Ill.2d 416, 275 N.E.2d 356; *People v. Callahan* (1974), 16 Ill.App.3d 1006, 307 N.E.2d 188.

The defendant asserts that he was prejudiced by the trial court's communication with the jury since that communication constituted the exertion of undue influence upon the jury. The defendant has cited two cases in support of this assertion. (*Crabtree v. Hagenbaugh* (1860), 23 Ill. 289; *People v. Rohwedder* (1967), 78 Ill.App.2d 211, 223 N.E.2d 1.) *Crabtree*

can be of no aid to the defendant, however, because it is no longer law and *Rohwedder* can be significantly distinguished from the instant case. In *Rohwedder* this court stated:

"* * * we are not convinced that no injury resulted from the communication between the judge and jury in this case. The Chief Judge testified that he called the jury down and asked them if they needed more time to deliberate. We believe that the jury would probably interpret this to mean that the judge thought it was about time that they brought in a verdict. (78 Ill.App.2d at 217, 223 N.E.2d at 4.)

In the instant case the record suggests that the jury initiated the communication with the court by informing the bailiff that they could not or had not reached a verdict. The trial judge merely informed the jury that they could continue to deliberate; there is nothing in the record to indicate that any pressure was put upon the jury to reach a verdict quickly. In *Rohwedder* the judge initiated the communication and had the bailiff bring the jury down to the court room, that procedure was found to be coercive pressure which deprived the defendant Rohwedder of a fair and orderly trial.

Our supreme court faced a factual situation similar to the one herein present in *People v. Tobe* (1971), 49 Ill.2d 538, 543, 276 N.E.2d 294, 298. Therein the supreme court affirmed the conviction and stated:

"We do not judge that the communication between the jurors and the bailiffs was coercive and prejudicial as the defendant claims. Considering the length of the trial and the time the jury spent in deliberating, we do not believe it can be reasonably said that the statements of the bailiffs that the jurors should continue to deliberate until they reach a verdict can be regarded as coercive."

In both *Tobe* and the instant case the jury informed a bailiff that they could not reach or had not reached a unanimous verdict, the bailiffs reported the communication to the judge and the judge instructed the bailiff to inform the jury to continue deliberations. The jury in *Tobe* had been deliberating approximately the same length of time as had the jury in the instant case. The supreme court held in *Tobe* that under such circumstances, absent a showing that the jury was coerced by the judge or bailiff, the communication is not deemed coercive or prejudicial. Since our review of the record reveals that the defendant in the instant case has failed to show that he was prejudiced by the trial judge's unauthorized communication with the jury we conclude that none of the defendant's statutory or constitutional rights were thereby offended.

■■ A further contention is that the trial court erred in imposing three

separate sentences. The defendant was sentenced to serve three concurrent sentences of 10 to 15 years for three counts of armed robbery. The three counts arose during the course of the alleged armed robbery of Bert's Hardware Store. The defendant argues that the record fails to indicate that the armed robbery of the three individuals was sufficiently separable to warrant individual sentences on each count. We find no merit in this argument.

We hold the supreme court's ruling in *People v. Prim* (1972), 53 Ill.2d 62, 289 N.E.2d 601, is dispositive of this issue. In *Prim* the defendant and three accomplices allegedly boarded a bus and, while armed with a gun, took property from the bus driver and from two passengers. The defendant was found guilty, and the court imposed separate sentences on the armed robbery counts and stated:

> "The armed robbery of the bus driver, of William Giersz and of Ermelindo Maldonado were three separate and distinct crimes committed by different persons or the same person at different times. \* \* \* Separate criminal acts were involved in each case and the court properly imposed separate though concurrent sentences for each offense. *People v. Raby*, 40 Ill.2d 392, 240 N.E.2d 595." (53 Ill.2d at 78, 289 N.E.2d at 610-611.)

In view of the similarity between the circumstances here present and those present in *Prim* we conclude that the three armed robberies in the instant case were separate and distinct offenses for which the court properly imposed separate sentences. That conclusion is also supported by *People v. Lewis* (1974), 17 Ill.App.3d 188, 308 N.E.2d 59 and by *People v. Ellis* (1971), 132 Ill.App.2d 920, 271 N.E.2d 47.

■■ The defendant's final contention is that the sentence imposed upon him was excessive. The trial court sentenced the defendant to three concurrent terms of not less than 10 nor more than 15 years in the penitentiary. The main thrust of the defendant's contention is "that the minimum sentence of ten years may serve to discourage the defendant in his efforts toward effective rehabilitation."

Although a hearing in aggravation and mitigation was held that hearing consisted solely of short statements made by each counsel. The defense counsel informed the court that the defendant was only 19 years old and that the defendant had received a "G.E.D." (General Equivalency Diploma) while he was in jail. The only evidence the State offered to aggravation was that the defendant had pled guilty to theft in 1970 and had beeen sentenced to serve 2 to 5 years in the penitentiary. The defendant was on parole for this offense at the time he allegedly committed the armed robberies involved herein. Although the defense counsel indi-

cated in his argument that a presentence investigative report had been prepared and that the trial court received the report that report has not been included in the record on appeal.

In *People v. Friday* (1973), 11 Ill.App.3d 1071, 297 N.E.2d 218, a defendant convicted of armed robbery was given a sentence of 15 to 35 years. The offense was allegedly committed while the defendant was on parole from another felony conviction. Despite the defendant's prior felony record, the reviewing court reduced the sentence to 5 to 12 years. A majority of this court considers the sentence here imposed as too severe, foreclosing the possibility of rehabilitation. We therefore modify the concurrent sentences here imposed to reduce the minimum on each to 7 years.

Although the defendant was not accorded a perfect trial free from all error he was given a fair trial. Accordingly, not having found any reversible error, we affirm the judgment of the circuit court of St. Clair County as modified.

Judgment affirmed as modified, cause remanded for issuance of *mittimuses* in compliance herewith.

G. MORAN, P. J., and CARTER, J., concur.