THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STANLEY RUDOLPH BAIN, Defendant-Appellant.

(No. 71-244; ▮▮▮▮▮▮▮

Fifth District—May 12, 1972.

Kenneth L. Jones, of Defender Project, of Mt. Vernon, for appellant.

R. W. Griffith, Jr., State's Attorney, of Edwardsville, for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

Defendant was convicted of rape in a jury trial in the Circuit Court of Madison County. He was sentenced to the penitentiary for the statutory minimum of not less than four years nor more than four years and a day. On this appeal defendant contends among other things, that he was not proved guilty beyond a reasonable doubt.

The act of sexual intercourse is not denied by defendant and most of the facts leading up to the incident are not in dispute. Defendant was twenty-one years of age and the prosecutrix nineteen. He met her on November 17, 1969 on a blind date prearranged the day before by Linda, a girl friend of prosecutrix. Linda had called, described defendant, and asked her if she wanted to date him. Linda testified that at the time she arranged the date she knew defendant was married but separated, and that she advised the prosecutrix of this fact. It was agreeable to prosecutrix, and the following afternoon defendant came to the apartment of prosecutrix about 5:30 o'clock in the afternoon, picked her up, and with two other boys drove to Linda's house to join her and her date. The group sat around talking and listening to the radio and then went for a ride around Alton in defendant's car. In the course of the ride defendant drove by and pointed out where he lived. Then they returned to Linda's where they again sat around, drank some beer and talked until about 9:00 o'clock when one of the boys asked defendant to take him home. Prosecutrix joined them for the ride. On the way back to Linda's de-

fendant took a back way and finally stopped the car on a lonely country road where the incident occurred.

Prosecutrix testified that defendant wanted to stay there and park but that she protested that she wanted to go home. She stated that she reached for the door but he jerked her back stating. "You will either have sex with me or you are going to eat me." She said she refused and that they argued back and forth until finally he pushed her down on the seat. When she tried to get up he hit her in the mouth with his fist. She said she was scared and that he then removed her slacks and underpants and had intercourse with her. On cross-examination she admitted that after they had taken the boy home she had continued to sit close to defendant with her arm around him while he drove. She denied necking with defendant either at Linda's or after they parked on the country road, but she admitted that she had kissed him twice at Linda's. When asked if defendant removed her clothing, she replied, "I don't know, sometimes it is just blurred in my mind—whether he removed them or I did." She admitted that she did not kick, scream, hit or scratch.

In her direct testimony prosecutrix stated that afterwards she put her clothes on and they sat and smoked a cigarette and talked. He asked her if she were ready to go and she told him that it was up to him. They then left to return to Linda's house but just as they drove up, "(H)er mom pulled into the driveway, I didn't want to stop so he took me home to my apartment." She said she got home about 11:30 or 12:00 o'clock. Her roommate was home but there is no indication that she made any mention of the incident to her. Later prosecutrix went to her mother's house and told her, and the police were called about 1:15 in the morning. Her mother and a deputy sheriff testified that prosecutrix appeared nervous, that she was crying and that her mouth was bruised and cut inside.

Defendant testified that at Linda's house they listened to the radio, drank a few beers, danced and necked a little and talked about the school they used to attend. When they parked on the country road he said they sat and smoked awhile and then "(S)tarted to neck and mess around with each other and one thing led to the other and we were having intercourse together." He denied that he hit prosecutrix or that he took off her clothing. He said she made no protest and did not attempt to get out of the car. Before they left he made a date with her for 4:00 o'clock the next afternoon. When they got to her apartment he said he walked her to the door, kissed her goodnight and then went home. Of three different witnesses presented by defendant to testify as to the reputation of prosecutrix for good morals only one was permitted to answer (be-

cause of difficulty in phrasing the question) and he stated that her reputation was pretty bad.

 It has often been stated that reviewing courts are especially charged with the duty of carefully examining the evidence in rape cases and that it is the further duty of the reviewing court not only to consider the evidence carefully but to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and to create an abiding conviction that he is guilty of the crime charged. Likewise, force is a necessary element of the crime and, while useless or foolhardy acts of resistance are not necessary, if the prosecutrix has use of her faculties and physical powers, the evidence must show such resistance as will demonstrate that the act was against her will. *People v. Taylor,* 48 Ill.2d, 91; *People v. DeFrates,* 33 Ill.2d. 190; *People v. Faulisi,* 25 Ill.2d 457.

 In the case before us it is readily apparent that the girl made no serious physical effort to resist. The State argues that this was attributable to her fear of defendant, but such a conclusion is belied by the facts. She admitted kissing defendant at the party and riding close with her arm around him all the way to the country road. She did not remember whether he took off her clothes or whether she did herself. After her first effort to reach for the door she apparently made no further physical protest. Afterwards she said she put on her clothes and they sat and smoked a cigarette, and when he asked if she were ready to go she said that it was up to him. She did testify that defendant hit her on the mouth causing it to be bruised and cut inside and the State argues that the testimony of her mother and the officer corroborates this fact. Such argument is made, apparently, to come within the rule that where the testimony of prosecutrix is not otherwise clear and convincing it must be corroborated by other evidence. (*People v. Szybeko,* 24 Ill.2d 335.) But even this corroboration is weakened as it was in *Szybeko,* by failure to make a timely complaint. When they drove back to Linda's house it was the prosecutrix who did not want to stop because Linda's mother had just pulled into the driveway. When she was dropped off at her apartment she admitted that her roommate was home but there is no indication that she told her. It was not until later when she went to her mother's house that she made her first complaint. The very basis for admission of a subsequent complaint is to rebut the presumption otherwise arising from the silence of complainant that nothing violent occurred. (*People v. Damen,* 28 Ill.2d 464.) In our opinion such failure to complain at both the first and second opportunity is more striking than the evidence of her bruised mouth which may or may not have been

caused by an attempt of defendant to force her into submission.

■■ From the above we cannot say that the State's evidence creates a clear and abiding conviction of defendant's guilt, and we conclude that a reasonable doubt of guilt exists which will not permit the judgment to stand. Accordingly, the judgment of the Circuit Court of Madison County is reversed, and the defendant is ordered discharged.

Judgment reversed.

EBERSPACHER, P. J., and JONES, J., concur.