THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD NORMANT *et al.*, Defendants-Appellants.

(No. 57901;

First District (5th Division)—January 10, 1975.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Thomas D. Rafter, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendants were jointly charged with two counts of armed robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—2) and were tried together. Defendants Hart and Reed chose a jury trial; defendants Normant, Ford and Williams chose a bench trial. Following their convictions they were sentenced as follows: Normant, 7 to 14 years; Reed, 5 to 10 years; Ford, 8 to 16 years; Hart, 7 to 14 years; and Williams, 5 years to 5 years and 1 day. All defendants join in this appeal.

Defendants raise three contentions for our consideration: (1) they were denied effective assistance of counsel due to their joint representation by a single attorney; (2) defendants Reed and Hart were denied a fair trial due to the trial court's refusal to excuse the jury while two of the bench-trial defendants testified, and this error was compounded when the prosecution relied on the testimony of the bench-trial defendants during closing argument; and (3) the trial court applied an erroneous standard of law in denying their motion to suppress evidence. Defendants do not challenge the sufficiency of the trial evidence.

Defendants were arrested and charged with the armed robbery of the V.I.P. Discount Store located at 1051 West 63rd Street in Chicago, and

a single public defender was appointed to represent them. At arraignment Ford requested an attorney other than the public defender. The court refused but suggested that Ford make his objection to the trial judge. Subsequently, in a written pro se motion, Normant requested the appointment of a bar association attorney for his defense. This motion was denied. Defendants made no further requests for separate counsel.

Prior to trial the court held a hearing on the motion of defendants Normant, Ford, Hart and Williams to suppress evidence seized at the time of their arrest. Defendants all testified that they were arrested between 5 and 6 P.M. on January 21, 1972, at the V.I.P. Discount Store, and that they were not shown warrants for their arrest and search. Normant testified that, at the time of his arrest, he had entered the store in order to purchase a shirt; Ford testified that he was shopping for a pair of pants; and Hart and Williams testified that they were standing innocently in the vicinity of the store.

The State then called Chicago Police Officer Joseph Caddigan who testified that at approximately 5:45 P.M. on the date in question he was on patrol with his partner, Officer Ronald Mainellis, when they received notification of a "silent holdup alarm" on the "Citywide Police Radio." They were less than a block from the store when they received the call, and it took them not more than a minute to arrive at the scene. He found Reed standing outside the doorway and said to him, "Police officers. We're going back into the store." Standing just inside the doorway were Williams and Hart; behind them, "just within the store proper," were Normant and Ford. Within a short period of time a Mrs. Banks approached him from the rear of the store and told him that defendants had just held her up. She also said that Normant and Ford had thrown their weapons behind the front counter. She identified all five defendants as being participants in the robbery. He then searched defendants. On cross-examination Caddigan testified that when he first arrived on the scene he thought that defendants could easily have been the victims of the robbery. Mrs. Banks did not tell him that Ford and Normant had been carrying guns until after he had searched them; however, he "didn't search anybody until she [Mrs. Banks] said she was robbed."

Officer Mainellis and Mary Aaron, a saleslady at the store, were called by the State and substantiated much of Caddigan's testimony.

The court denied defendants' motion, finding that Officer Caddigan "had probable cause to make the detention and the subsequent arrest and search of the defendants."

At trial Ella Mae Banks testified for the State that she is the owner of the V.I.P. Discount Store. On January 21, 1972, she was present at

approximately 5:45 P.M. with two employees, Mary Aaron and Felix Foster, when "four fellows walked into the store." Another individual stayed at the door. She identified defendants as these five men. Normant asked her if he could try on a coat. He turned his back to her as he put it on. When he turned around, he had a gun drawn and said, "This is a stickup." Ford, who was also armed with a gun, moved to the back of the store. Normant ordered Felix Foster to empty his pockets and lie on the floor. Foster took out his black billfold, and Normant picked it up and put it in his pocket. Normant then ordered her to open her two cash registers. Ford and Hart took the money out of them. Normant, Ford and Hart also broke into the jewelry display case, and Reed and Hart began removing clothes from the shelves. Suddenly Williams, who was posted just outside the store, knocked on the door and said, "The police." The other four rushed to the front of the store. Just before the police entered, Ford and Normant threw their guns over the counter. Upon entering, one of the police officers asked, "What's going on here?" She answered, "It's a stickup."

Mary Aaron and Felix Foster corroborated the testimony of Mrs. Banks.

The testimony of Officers Caddigan and Mainellis for the State was substantially similar to that which they gave at the hearing on defendants' motion to suppress. They added that when they searched defendants they found two watches in Williams' pockets, United States currency in Ford's pocket and currency and a billfold, identified by Felix Foster as the one taken from him, in Normant's pocket.

Chicago Police Officer Rudy Rodriquez testified for the State that he found the two holdup weapons behind the counter where Mrs. Banks indicated Ford and Normant had thrown them.

At the conclusion of the State's case defense counsel requested that the jury be excused while he presented evidence on behalf of the bench-trial defendants. The trial court denied this request but did give a cautionary instruction to the jury before the testimony of each bench-trial defendant.

Reed, a jury-trial defendant, testified that he and Hart were walking past the store when they were told by police officers to come back. They entered the store where they were placed under arrest.

Williams testified that he was walking past the store when he was arrested. While in the custody of the police he saw the other defendants being led out of the store by the police.

Normant testified that he was in the store when police officers entered, pushing Hart, Reed and Ford, who were then lined up against a wall. He was ordered to join the three men against the wall.

Ford and Hart chose not to testify on their own behalf. Defense counsel represented to the court that Hart decided against testifying because he was not successful in a motion to bar use of evidence of his prior convictions.

## OPINION

Defendants, relying on *Glasser v. United States*, 315 U.S. 60, first contend that they were denied effective assistance of counsel by reason of their joint representation by one attorney.

■■ The Supreme Court in *Glasser* found that where the trial court was put on notice that joint representation might lead to a conflict of interests, and the record indicates that the defendant was consequently prejudiced, the defendant's Sixth Amendment guarantee of effective assistance of counsel had been violated. However, the mere fact that defendants are to be tried jointly does not necessitate the appointment of separate counsel for each of them. The Illinois Supreme Court has held that some prejudice or conflict of interest resulting from joint representation must exist before one can be said to have been denied the effective assistance of counsel. (*People v. Somerville*, 42 Ill.2d 1, 10, 245 N.E.2d 461.) It becomes necessary to appoint an individual attorney to represent each defendant only if there is a showing that a conflict of interest can be anticipated. (*People v. Robinson*, 42 Ill.2d 371, 247 N.E.2d 898.) Thus, if there is no inconsistency in their defenses, it is not improper for the same public defender to contemporaneously represent more than one defendant. (*People v. McCasle*, 35 Ill.2d 552, 221 N.E.2d 227.) This principle was illustrated in *People v. Williams*, 36 Ill.2d 194, 222 N.E.2d 321, where the court affirmed the convictions of six codefendants, prosecuted for rape, who were represented by a single public defender. The court noted that the defenses of the co-defendants were not antagonistic and then found that "[t]here is nothing in this record to suggest that there would have been a different result if there had been six attorneys appointed to represent the defendants in this trial or in six different trials." *People v. Williams*, 36 Ill.2d 194, 207.

■■ In the instant case it is equally clear that there would not have been a different result if five attorneys had been appointed to represent defendants at a single trial or in five separate trials. The record reveals that all five defendants were identified at the scene of the crime by the victims of the armed robbery. Defendants at no time indicated to the trial court that their defenses would be antagonistic. Their accounts of the events that preceded their arrests were consistent; those defendants who chose to testify uniformly claimed that they were innocently going about their business when seized by the police. Thus the testimony of no defendant

incriminated his fellows. We find that under the facts and circumstances of this case the representation of defendants by a single attorney did not constitute a denial of effective assistance of counsel.

Defendants Reed and Hart, who chose to be tried by a jury, assert that the court erred when it refused to excuse the jury while two of the bench-trial defendants testified, and that this error was compounded when the prosecution relied on their testimony during final argument.

■■ As indicated above, the testimony complained of, given by defendants Williams and Normant, in no way inculpated Reed and Hart. Moreover, the trial court, prior to the testimony of Williams and Normant, advised the jury that they were not to take into account any testimony given by the bench-trial defendants when considering the guilt or innocence of Reed and Hart. Although mention of this testimony by the prosecution during closing argument may have been improper, we believe that in view of the overwhelming strength of the State's case, the procedures which defendants claim as error were harmless beyond a reaonable doubt. *Chapman v. California,* 386 U.S. 18.

■■ Finally, defendants challenge the constitutionality of section 114—12(b) of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 114—12(b)).* They claim that it placed upon them the burden of proving that their arrest and subsequent search were illegal whereas the Fourth Amendment requires that the *prosecution* justify a warrantless search. We find no merit in defendants' contention.

■■ Defendants have cited several Federal cases to the effect that the State must establish the legal justification for a warrantless search. (See, *e.g., Vale v. Louisiana,* 399 U.S. 30; *United States v. Burhannon* (7th Cir.), 388 F.2d 961.) Illinois procedures under section 114—12(b) are in accord with this rule. Our courts have consistently held that once the defendant has made a prima facie case that the police lacked probable cause (*i.e.,* by evidence that the police had no warrant, and that defendant was doing nothing unusual when arrested), the burden of going forward with evidence to demonstrate the legal justification for the search shifts to the State. *People v. Cassell,* 101 Ill.App.2d 279, 243 N.E.2d 363; *People v. Moncrief,* 131 Ill.App.2d 770, 268 N.E.2d 717; *People v. King,* 12 Ill.App.3d 355, 298 N.E.2d 715.

■■ In the instant case, at the hearing on their motion to suppress, defendants testified that they were shopping or merely walking past the V.I.P. Discount Store when police officers, who had no warrant, searched and arrested them. The burden then shifted to the State, which intro-

---

* Section 114—12(b) (Ill. Rev. Stat. 1971, ch. 38, par. 114—12(b)) provides in pertinent part that "*  *  * the burden of proving that the search and seizure were unlawful shall be on the defendant."

duced evidence that officers on patrol within one block of the store responded to a radio call and proceeded to the scene of the crime where they found the five defendants. Although defendants now claim that Patrolman Caddigan arrested and searched them before they were identified by Mrs. Banks and, therefore, had no probable cause, the record reveals that the officer testified, "I didn't search anyone until she [Mrs. Banks] said she was robbed." The trial court clearly found this account of defendants' arrest to be more credible than the one which they now put forward. On the basis of this record we cannot say that the court below committed error in finding that the police had probable cause to arrest and search defendants, nor do we believe that in following well-established procedures in ruling on their suppression motion it violated the Fourth Amendment.

For the foregoing reasons we affirm the judgment entered below.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.