THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICO LATIMORE *et al.*, Defendants-Appellants.

(No. 73-99; ▮▮▮▮▮▮▮▮

Fifth District—November 13, 1975.

G. MORAN, J., dissenting.

Paul Bradley and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellants.

Michael J. Henshaw, State's Attorney, of Harrisburg (Edward N. Morris and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Defendants Rico Latimore, Arthur V. Vesey, James Williams and Herman Yates III were indicted for the offense of rape. A jury found each of the defendants guilty. The circuit court of Saline County entered judgments of conviction against each of the defendants. Defendant Latimore was sentenced to a term of 9 to 20 years and defendants Vesey, Williams and Yates were each sentenced to a term of 7 to 20 years. All four defendants perfected separate appeals. The four appeals were consolidated for purposes of oral argument and opinion. Subsequently, we found it necessary to sever the appeals of Williams and Yates from those of Latimore and Vesey. In a previously filed opinion, *People v. Ed Williams*, 29 Ill.App.3d 434, 331 N.E.2d 570 (abstract opinion), we reversed the convictions of Williams and Yates because of the trial court's failure to comply with the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 701—1 *et seq.*). Consequently, this opinion concerns only the appeals of Latimore and Vesey (hereinafter referred to as defendants).

■■ The defendants each contend that they were denied their right to a prompt preliminary hearing pursuant to Article I, section 7 of the Illinois Constitution. In *People v. Moore*, 28 Ill.App.3d 1085, 1089, 329 N.E.2d 893, 896, this Court concluded that,

"* * * section 7 of article I of the 1970 Constitution (Ill. Const. art. I, § 7) was included for the sole purpose of guaranteeing that a defendant would not be held in custody or on bail without a prompt showing of probable cause. In the instant case the requisite probable cause was shown by prompt indictment."

Similarly, the indictments returned against the defendants in the instant case, 21 days after their arrest, satisfied the requirement of a prompt determination of probable cause as mandated by section 7 of Article I of the 1970 Constitution (Ill. Const., art. I, § 7).

Next, each of the defendants claim that they were denied fair and impartial hearings on their motions to suppress identification testimony. Defendant Vesey contends that he never received a hearing and defendant Latimore contends that his motion to suppress was denied before the trial court considered all of the evidence. Neither defendant here contends that the grounds urged in their motions to suppress required suppression.

■■ A hearing on defendant Latimore's motion to suppress was commenced on May 22, 1972, before Judge Morris. The hearing was continued until June 5, 1972. Whereupon, Judge Morris granted Latimore's motion to substitute judges. Judge Porter was assigned to hear the motion. He ruled, without objection, that he would read the transcript of

the previous testimony. After hearing additional testimony he denied Latimore's motion to suppress. On June 7, 1972, after expressly stating that he had read the previously transcribed testimony, Judge Porter again denied Latimore's motion to suppress. Since the record reveals that no objection was raised to the reading of the transcribed testimony and that the judge had read the transcript when he denied the motion on June 7, 1972, we find without merit defendant Latimore's contention that he was denied a fair hearing.

■■ With respect to defendant Vesey we find that he waived his right to a hearing on his motion to suppress line-up identification. On September 1, 1972, at a hearing on motions to suppress identification the defense counsel stated, "* * * Yates has not had a hearing on his Motion to Suppress the line-up identification and Latimore and Vesey has as I understand it, Your Honor." The trial court then heard the motions to suppress of Yates and Williams. On the date of the trial the attorney for the defendants noted that no hearing had been held on Vesey's motion to suppress and moved, orally, for such a hearing. The trial court responded in the following manner,

"Oral motion made at this time for the hearing on Mr. Vesey, Motion for Suppression of Line-up Identification. The Court will review its records to see what the situation actually is, however, this motion will not be considered at this time. Should it be necessary in the course of events to have a hearing on that Motion, it will be conducted during the trial when it becomes appropriate."

The motion to suppress was not renewed by defense counsel and, except for the stricken inquiries propounded by the defense counsel, the line-up identification was not mentioned during the trial. Under such circumstances we hold that defendant Vesey cannot now predicate error on the trial court's failure to grant him a hearing he could have requested. See *People v. Colon*, 9 Ill.App.3d 989, 293 N.E.2d 468. See also *People v. Kostos*, 21 Ill.2d 496, 173 N.E.2d 466.

■■■ The defendants also contend that the trial court erred in consolidating the defendants' cases for trial. We do not agree. Section 114—7 of the Code of Criminal Procedure provides,

"The court may order 2 or more charges to be tried together if the offenses *and* the *defendants could have been joined in a single charge*. The procedure shall be the same as if the prosecution were under a single charge." (Emphasis ours.) (Ill. Rev. Stat. 1971, ch. 38, par. 114—7.)

It *is* irrefutable that the circumstances which gave rise to the charges against each of the defendants arose out of the same comprehensive transaction. Thus, the defendants could have been joined in a single

charge. See, Illinois Revised Statutes 1971, ch. 38, par. 111—4(b). While defendants should not be joined together for trial where one of several defendants has made admissions or confessions implicating the other defendants which are likely to be admitted into evidence at trial (*Bruton v. United States*, 391 U.S. 123, 20 L.Ed.2d 476; 88 S.Ct. 1620; *People v. Clark*, 17 Ill.2d 486, 162 N.E.2d 413), where, as in the instant case, the State's Attorney declares that none of the defendants' written statements would be introduced and, in fact, no testimony concerning such statements was admitted at trial, we cannot say that the trial court erred in ordering the defendants' cases consolidated for trial. See *People v. Rosenborgh*, 21 Ill.App.3d 676, 315 N.E.2d 545.

■■ In a related contention the defendants' claim that it was error to appoint the same counsel to defend all of the defendants (including Williams and Yates). We addressed this specific issue in *People v. Dickens*, 19 Ill.App.3d 419, 311 N.E.2d 705. Briefly stated, we held that unless there is some showing that the defenses may be inconsistent and that the interests of joint defendants are in fact antagonistic, co-defendants do not have the right to separate counsel. (See also *People v. Robinson*, 42 Ill.2d 371, 247 N.E.2d 898, *People v. Normant*, 25 Ill.App.3d 536, 323 N.E.2d 553.) In the instant case Vesey pled not guilty and presented no evidence in his defense. On the other hand, Latimore pled not guilty and raised the defense of consent. Latimore testified that he had intercourse with the complaining witness, at her urging, after the other boys had left. This defense is not antagonistic to Vesey's denial of the charge. Rather, Latimore's defense is entirely consistent with Vesey's denial of guilt. Consequently, we do not find any error in the denial of the defendants' request for separate counsel.

The defendants' next allegation of error concerns the trial court's exclusion of spectators from the courtroom during the presentation of testimony by the complaining witness. The defendants contend that this action denied them their Constitutional right to a public trial. Immediately prior to the testimony of the complaining witness, the trial court made the following declaration,

> "At this time, Mr. Bailiff, I am going to ask that, of course, the Jury and the Alternates remain in the Courtroom and that the four defendants, their attorney, the State's Attorney, the Clerk, the Reporter, the Bailiffs and the Sheriff. Mr. Sheriff I am instructing you to clear the courtroom of any and all spectators; anyone remaining behind that rail between us and the spectators, I want their names and their reason for staying; otherwise, they will all be removed from the courtroom. We will take a ten-minute recess so you may do that."

The following notation then appears in the record,

"Whereupon; a short recess was had; during which Reverend Myrtle Miller, Pastor of the A.M.E. Church on 7 East Gaskin Street, Harrisburg, Illinois, was given permission by the Court to remain in the courtroom during the testimony of the complaining witness, *  *  *."

During the examination of the complaining witness the court had occasion to further amplify its position. It did so in the following manner:

"Members of the Press are welcome. If we have a tv announcer here, he's welcome. Anyone that represents the newspaper or any news-media whatsoever is welcome. If a person has a specific interest in here, they would be welcome too, but a person who has come out of curiosity only or who is just concerned only with the progress of this case and desire to hear the testimony of this witness are excluded. I made that clear awhile ago. Mrs. Miller is here because of her position in the community, and because of whom she represents. Now, if anybody else represents a group similar to her's they, too, are welcome."

The trial court then allowed one of the defense counsel's assistants to join the others in the courtroom. The examination of the complaining witness then continued.

■■ We do not find the limitations imposed by the trial court repugnant to the right to a public trial as guaranteed by the United States Constitution (amendment VI) and the 1970 Constitution of Illinois (article 1, section 8). An accused is guaranteed a public trial because of the inherent distrust for secret trials and as "a safeguard against any attempt to employ the courts as instruments of persecution." (*In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682.) As noted in *United States v. Fay* (2nd Cir. 1968), 350 F.2d 967, *cert. denied,* 384 U.S. 1008:

"*  *  *  the public trial requirement is subject to the trial judge's power to prevent offensive evidence from being exhibited to the public, Lancaster v. United States, 110 U.S. App. D.C. 331, 293 F.2d 519 (1961), to prevent unnecessary pressures or embarrassment to a witness or a victim as in the rape of a young child, Geise v. United States, 262 F.2d 151 (9 Cir. 1958), or to prevent young persons from attending a trial of a scandalous nature, United States v. Kobi, 172 F.2d 919, 924 (3 Cir. 1949)." (350 F.2d @ 971.)

In *Harris v. Stephens* (8th Cir. 1966), 361 F.2d 888, *cert. denied,* 386 U.S. 964, the Eighth Circuit Court of Appeals was confronted with closing of the courtroom to spectators during the testimony of a 23-year-old rape victim. The court there held that,

"The argument concerning the closing of the courtroom to spectators during the testimony of the victim is equally spurious. This is a frequent and accepted practice when the lurid details of such a crime must be related by a young lady. See United States v. Geise, 262 F.2d 151 (9th Cir. 1958), *cert. denied*, 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959); Hogan v. State, 191 Ark. 437, 86 S.W.2d 931 (1935)." (361 F.2d @ 891.)

See also *State v. Purvis* (1968), 157 Conn. 198, 251 A.2d 178, *cert. denied*, 395 U.S. 928; *Price v. State* (Tex. Crim. App. 1973), 496 S.W.2d 103). On the basis of the foregoing authorities we find that the trial court's actions in the instant case, which allowed all spectators with a "specific interest" to remain during the testimony of the complaining witness, were not violative of the defendants' right to a public trial.

The defendants also contend that the trial court unreasonably restricted their cross-examination of the witnesses against them. In order to review this contention it is necessary to briefly review the evidence presented by the State. The State's first witness was Jeffery Elkins. He testified that he and the complaining witness had gone to the Garden of the Gods in Giant City State Park. While walking in the park, six boys began to follow them. He identified the defendants as four of the six boys. After an exchange of abusive language he and the complaining witness began running away from the boys, who now numbered only four. The witness testified that three of the boys grabbed the complaining witness and threw her to the ground. The fourth boy threatened the witness with a stick. The witness testified that he then ran to get help. The witness had not seen anyone have intercourse with the complaining witness.

The State's second witness was Russell Cosby, a Supervisor of the Dixon Spring State Boys School. He recalled that a group of boys including the defendants had started up a trail leading in the same direction as the path taken by Elkins and the complaining witness. One of the boys who had accompanied the defendants had returned and reported an incident, however, the witness was not able to see anything. The witness then stated he started loading the other boys on the bus. A headcount revealed that four boys were missing, the defendants and Williams and Yates. He testified that all of the boys from the school were wearing tee-shirts and jeans. He later found the defendants, together with Williams and Yates, walking down a road.

The State's third witness, Gene Bridges, another camp counselor, largely corroborated the testimony of Russell Cosby. He added that the honking of a horn was the signal for the boys to return to the parking lot.

The State's fourth witness was Keith Bannier. He testified that he and Stanley Ferguson accompanied the defendants and Williams and Yates on the day in question. This group came across a boy and a girl and started talking to them. After a short period of time he heard the horn and he and Ferguson left.

The State's fifth witness, Stanley Ferguson, largely corroborated the testimony of Bannier. He did add, however, that Williams was carrying a stick.

The State then called John Green. He testified that he and his girlfriend were in the Garden of Gods on the day in question. He recalled picking up two boys and taking them to a bus. He testified that the complaining witness later came walking out of the woods. She looked disoriented. After she got in his car she began crying. She asked Green to take her to Carbondale. Green's girlfriend, Nancy Ensinger, corroborated his testimony.

The State next called Dr. Earl Walker. After being qualified as a medical expert, he testified that he had examined the complaining witness on the day in question. His examination revealed that her vaginal walls were tender and that there was mobile sperm in her vagina. He also found some dirt and leaves on the bottom portion of her body.

The State then called the complaining witness. Her testimony resembled the testimony of Elkins. She added, however, that after Elkins had fled, defendant Latimore grabbed her. After she hit Latimore, he threatened to kill her if she did it again. She testified that while she was on the ground the defendants were on her. She further testified that they pulled her pants down and that all four, the defendants and Williams and Yates, had had intercourse with her. She remembered them saying: "it's my turn," "you've been on her long enough, let me get on." She noted that all four had placed their male organs into her body.

Within the framework of the above testimony the defendants claim that on at least five separate occasions the trial court unreasonably restricted the defendants' cross-examination of Elkins and the complaining witness. It has, however, been repeatedly held that it is for the trial court to determine the permissible scope of cross-examination and his ruling will not be disturbed unless it constitutes a clear abuse of discretion resulting in manifest prejudice to the defendant. (*E.g., People v. Hubbard,* 55 Ill.2d 142, 302 N.E.2d 609; *People v. Hardy,* 19 Ill.App.3d 718, 312 N.E.2d 359 (abstract opinion); *People v. Lipscomb,* 19 Ill.App.3d 114, 311 N.E.2d 257.) Reviewing the defendants' alleged instances of error with this in mind we find only two of sufficient magnitude to merit further discussion.

■■ In the first instance the defendants claim that their cross-examina-

tion of the complaining witness should have included the right to impeach her by use of her prior inconsistent statements. According to the defendants' argument, "The fact that the prosecutrix refused to admit that her eyes were closed 99% of the time is inconsistent with her previous testimony to that effect. Such inconsistency clearly affects her credibility and it was, therefore, error to restrict the proposed impeachment." The colloquy in the record which gave rise to this claim is as follows:

"Q. Okay. Let's go on. Now did you say that you had your eyes closed ninety-nine per cent of the time and that's why you don't know who had intercourse with you?

MR. MEEHAN: I'll object. That was not her testimony at all, Your Honor. Her testimony was that her eyes were open part of the time and closed part of the time.

COURT: The objection is sustained.

Q. Is the reason you didn't know who had intercourse with you at that time was because your eyes were closed?

A. No.

Q. Now, were your eyes closed ninety-nine per cent of the time?

A. I answered that before they were both closed and open.

Q. Well, were * * * try to answer my question. Were your eyes closed ninety-nine per cent of the time?

MR. MEEHAN: I'll object. She answered the question the second time, Your Honor. It's argumentative especially in a time and situation like this.

COURT: The witness did answer the question counsel.

MR. JOHNSON: If she did, I didn't hear it."

This terminated this line of inquiry. The defense counsel never asked if she had previously made such a statement, nor does the record reveal that the trial court prevented such an inquiry. The defense counsel made no offer of proof with respect to this matter, And, while the complaining witness had, on preliminary hearing, previously stated that she had her "eyes closed ninety-nine per cent of the time," she had, contrary to defense counsel's initial inquiry, consistently stated that she knew that all four individuals had had intercourse with her. In view of these circumstances, which demonstrate that the defense counsel failed to establish a proper foundation, we find no error in the actions taken by the trial court.

■■■ The other instance of error concerned the trial court's sustaining of the objection to the defense counsel's inquiry, "Did you say, 'I have been raped'." While the manner in which a rape victim reports the crime is a relevant consideration (see *People v. Bain*, 5 Ill.App.3d 632,

283 N.E.2d 632), we are not of the opinion that the trial court's action in the instant case requires that we remand this cause for a new trial. Two of the State's witnesses testified that the complaining witness emerged from the woods in a dazed and disoriented condition. A doctor examined the complaining witness the same afternoon and discovered mobile sperm in her vagina. The same doctor discovered dirt and leaves on the bottom portion of her body. In view of this testimony, we cannot say that the inability of the defense counsel to question the complaining witness about whether she told the two strangers who had picked her up that she had just been raped resulted in manifest prejudice to the defendants.

■■ Finally, the defendants contend the trial court improperly handled the communications it had received from the jury during the jury's deliberations. There were two communications from the jury during its deliberations. The record reveals that in the first instance the trial court was advised by the bailiff that the jurors wished to communicate with the court. The trial court prepared a memorandum to be read by the bailiff to the jury. It stated, "The judge cannot communicate with the jurors, you must continue with your deliberations." At a conference called by the trial court, the court solicited comments and gave both the State's Attorney and the defense counsel an opportunity to object to the court's memorandum. The defense counsel objected and suggested as an alternative that the memorandum be given to the jurors and that the phrase "at this time" be appended to the memorandum. While the record before us does not reveal whether the trial court saw fit to adopt the suggestions proffered by the defense counsel, it does reveal that the defense counsel made no objection to the trial court's denial of the jury's request to communicate with the court. Under such circumstances, the defendant may not now complain of the failure of the trial court to communicate with the jury. See *People v. Clark*, 52 Ill.2d 374, 288 N.E.2d 363; *People v. Mills*, 40 Ill.2d 4, 237 N.E.2d 697.

■■ In the second instance the bailiff advised the court at approximately 10:25 p.m. that "the foreman of the jury had knocked on the door and in general terms told him that they did not think they would be able to arrive at a verdict, and that they would like to be bedded down for the night." At the time this message was delivered to the trial court, the State's Attorney was absent from the courthouse. The trial court deferred any action until the return of the State's Attorney at 11 p.m. At that time the trial court decided not to respond to the jury's request, however, the court ordered the bailiff to report to the Court if the jury knocked again. Nothing further was heard from the jury until they re-

turned their verdict at 3:22 a.m. the following morning. We fail to see how the trial court's actions coerced the jury's verdict of guilty as claimed by the defendants. As stated by our Supreme Court in *People v. Tobe*, 49 Ill.2d 538, 543, 276 N.E.2d 294, 298,

> "Considering the length of the trial and the time the jury spent in deliberating, we do not believe it can reasonably be said that the statements of the bailiffs that the jurors should continue to deliberate until they reached a verdict can be regarded as coercive."

(See also *People v. Rogers*, 23 Ill.App.3d 115, 318 N.E.2d 715, 719-721.) Similarly, we find the trial court's failure to respond to the jury's communication in the instant case neither coercive nor prejudical to the defendants.

■■ In further support of their argument that the trial court erred in handling its communications with the jury the defendants contend that the trial court's action evidence its erroneous belief that it had no discretion in such matters, citing *People v. Queen*, 56 Ill.2d 560, 310 N.E.2d 166. In both *People v. Queen*, 56 Ill.2d 560, 565, 310 N.E.2d 166, 169, and *People v. Autman*, 58 Ill.2d 171, 176, 317 N.E.2d 570, 572, our supreme court stated, "There is error when a trial court refuses to exercise discretion in the erroneous belief that it has no discretion as to the question presented." In each case the court found that the trial court's response to the jury's request to review evidence disclosed that the trial court was laboring under the erroneous belief that it did not have discretion to consider the request. Moreover, in each case the court reviewed the circumstances surrounding the communications and determined that the jury's request was for review of critical testimony and that the failure of the trial court to consider the request(s) was (were) prejudicial to the defendant. Conversely, the circumstances surrounding the communications in the instant case fail to reveal that the trial court was laboring under the misapprehension that it had no discretion. Instead, the record reveals that the trial court was open to the jury's communications and did in fact consider such requests while in conference with both the State's Attorney and the defense counsel. The trial court's actions appear to have been predicated on the belief that the jury, who had only been deliberating for a few hours, should be given an opportunity to resolve their difficulties without any external influences. And, as previously noted, while the defense attorney offered some suggestions to the court, he did acquiesce to the trial court's decision not to grant the jury's request. Under these circumstances, we find little merit in the defendants' argument that the trial court's actions were the result of the erroneous belief that it had no discretion.

Although the defendants were not accorded a perfect trial free from all error they were given a fair trial. Accordingly, not having found any reversible error, we affirm the judgments of conviction entered by the circuit court of Saline County.

Judgments affirmed.

KARNS, J., concurs.

Mr. JUSTICE GEORGE MORAN, dissenting:

I dissent from the majority opinion's determination that defendants were given a fair trial. Not only were they not accorded a "perfect trial free from all error," but they were subjected to a fundamentally unfair forum for the determination of guilt or innocence. The record demonstrates that defense counsel was limited throughout the trial in assuring that defendants received a fair adjudication.

The majority conclude that the defendants may not now complain of the failure of the trial court to communicate with the jury. A review of the record demonstrates that defense counsel objected to the trial court's refusal to ascertain the jury's confusion. In an effort to ameliorate the court's communication, defense counsel suggested the inclusion of the words "at this time." This suggestion followed a general objection to the failure to recall the jury. Such action by the defense counsel cannot legitimately and should not be interpreted as a waiver, especially since the error supposedly waived has been viewed by our courts to be very serious.

The trial court's communication told the jury that the judge cannot communicate with them. This statement is patently erroneous. A trial judge has a responsibility to ensure that the jury functions properly in its determination of guilt or innocence. In *People v. Kucala*, 7 Ill.App.3d 1029, 1035, 288 N.E.2d 622, 627, the court held that:

> "Where a jury has raised an explicit question on a point of law arising from the facts over which there is doubt or confusion, the court should attempt to clarify the question in the minds of the jury members."

(See also *People v. Harmon*, 104 Ill.App.2d 294, 244 N.E.2d 358; *Hunter v. Smallwood*, 28 Ill.App.3d 386, 328 N.E.2d 344.) Furthermore, section 5.3(a) of the A.B.A. Standards Relating to Trial by Jury provides that:

> "If the jury, after retiring for deliberation, desires to be informed on any point of law, they *shall* be conducted to the courtroom."
> (Emphasis added.)

The failure of the trial court even to inquire about the specific concern of the jury and the direction to continue deliberations left the jury to

grope without some guidance from the court. As our supreme court stated in reviewing the propriety of an Allen instruction:

"Jurors, and especially those voting in the minority, conceivably could feel a coercive influence if when seeking guidance from the court they are met with stony silence and sent back to the jury-room for further deliberation." (*People v. Prim*, 53 Ill.2d 62, 74, 289 N.E.2d 601, *cert. denied*, 412 U.S. 918.)

This error alone is sufficiently serious to cause reversal.

Defendants argue that the communication, especially since the trial court refused to add defense counsel's corrective language, implies that the trial court erroneously believed that it did not have discretion to act. I agree. The court in *People v. Briggman*, 21 Ill.App.3d 747, 316 N.E.2d 121, held that the trial court's failure to inquire about the specific concern of the jury supports the view that the trial court thought it had no discretion. In this case, there is no explanation in the record for the trial court's refusal *at that time* to consider the jury's concern or its apparent unwillingness to consider such concerns in the future. This attitude was reflected also in the trial court's disregard of the jury's second communication. Under the holding of *People v. Queen*, 56 Ill.2d 560, 310 N.E.2d 166, it was error for the trial court to refuse to exercise discretion under the erroneous belief that it had no discretion.

The total effect of the trial court's position concerning the jury was to force the jury to reach a decision without proper guidance. After being told that the judge cannot communicate with the jury and having its second communication totally disregarded, the jury could not but feel the coercion to reach a decision. As the length of deliberation increases the reasonableness of a doubt succumbs. Under the circumstances of this case, I cannot agree with the majority that the trial court's action was not prejudicial to the defendants.

The majority also concludes that, although some error occurred in limiting the scope of defense counsel's cross-examination, there was not manifest prejudice to defendants. The majority holds that the limitation on defense counsel's cross-examination of the prosecutrix with regard to an earlier statement was waived because there was an insufficient foundation for the use of an inconsistent statement. However, the majority's excerpt from the record is taken out of context. Prosecutrix had been examined about a previous statement under oath concerning her first comments to defendant Yates. Following this questioning is the excerpt quoted by the majority. The clear implication from the sequence is that the questioning related to the previous statement under oath. When defense counsel attempted to clarify the situation, the court sustained objections.

Our supreme court has emphasized that a party's right to cross-examine a witness, especially the defendant's right in a criminal case, must not be unduly restricted. (*People v. Pelletri*, 323 Ill. 176, 155 N.E. 591; *People v. Del Prete*, 364 Ill. 376, 4 N.E.2d 484. See also *Smith v. Illinois*, 390 U.S. 129.) In a prosecution for rape, the defendants must be given adequate leeway to explore whatever goes to explain, modify, or discredit what the witnesses have previously stated. The court precluded defense counsel from impeaching the prosecutrix's testimony about ability to observe the defendants. Furthermore, defense counsel was limited in developing the absence of the report of an offense. Furthermore, the trial court sustained other objections to proper attempts to impeach the credibility of the prosecutrix.

The trial court also restricted the cross-examination of Jeffrey Elkins concerning his actions after running away. The defense was not able to determine whether Elkins reported the incident to anyone or what he subsequently did. These facts are relevant to the question whether an offense was committed. The majority opinion dismisses this restriction of cross-examination as not of sufficient magnitude to merit further discussion.

Although a trial court has discretion to limit the scope of cross-examination the discretion in this case was abused. The overall effect of these limitations was to deny defendants their right to cross-examination effectively the witnesses against them. Nor can it be said that these restrictions were not prejudicial, since the witnesses whose cross-examination was improperly restricted were the principal witnesses against defendants.

A third basis for this dissent is the majority's treatment of the trial court's orders consolidating the defendants' cases for trial and refusing defense counsel's requests to withdraw from the defense of all but one of the defendants. The same issue is present in analyzing both orders. If the defenses may be inconsistent or the interests of the joint defendants are in fact antagonistic, the trial court's orders were erroneous. The majority concludes that Latimore's defense is entirely consistent with Vesey's plea of not guilty. However, since Vesey is relying on reasonable doubt as to the State's case and Latimore is claiming consent, there is a conflict. Latimore's testimony placed Vesey at the scene, eliminating any reliance on the failure of the State's identification evidence. Furthermore, the defense counsel was put at an obvious disadvantage in representing four defendants. This disadvantage is partially reflected in the confusion of Vesey and Yates with regard to which had already been granted a hearing on the defense motions to suppress identification testimony. Under all of the circumstances, the trial court erred in consolidating the

cases for trial and, after consolidating the cases, in not relieving defense counsel of responsibility for four defendants.

In summary, the circumstances surrounding defendants' trial were not conducive to the impartiality and fairness which due process requires. Although the evidence was sufficient to support the verdict of the jury, fairness requires more than that the results coincide with the evidence. Defense counsel was limited throughout the trial in properly representing defendants. The only remedy for such conduct is reversal and remand for a proper forum in which the issues of guilt and innocence may be impartially determined.