THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES MURDOCK, Defendant-Appellant.

Third District   No. 76-105

Opinion filed June 30, 1977.

STOUDER, J., concurring in part and dissenting in part.

Kathy M. Morris, of State Appellate Defender's Office, of Chicago, and Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the Circuit Court of Peoria County by James Murdock (hereinafter referred to as the defendant), who after trial by jury was found guilty of the offense of robbery and two acts of deviate sexual assault and not guilty of the offense of burglary. The defendant was sentenced to the Department of Corrections to serve two concurrent terms of not less than 40 years nor more than 120 years in the penitentiary for the deviate sexual assault charges. The court reserved judgment on the robbery conviction.

The evidence adduced at the trial of the defendant disclosed two versions of the incidents which resulted in his conviction. A verbatim recital of the testimony presented in the trial court would indeed present an odious picture, yet we are nevertheless compelled to set forth a portion of such testimony in order to determine issues raised in this appeal.

The complainant, Janet Wavering, testified that she is a 29-year-old woman, blind since birth, and that on September 11, 1975, a male individual forced an entry into her apartment at approximately 10 p.m. and remained there until approximately 3 a.m. of September 12, 1975. During this approximate five-hour period the complainant was subjected to vile and profane language, an attempted choking, repeated slappings, fondling of her breasts, an invasion of her vagina by the hands of the intruder, an act of cunnilingus, and an attempt to make a sexual contact of some nature with her anus. The sexual activities of the intruder were interrupted twice during the approximate five hour period that he remained in the complainant's apartment, first when he threatened to kill her and told her that he possessed a gun 'and a knife, and demanded money. The complainant complied by giving the intruder the contents of her purse including a government check. The second interruption occurred when the intruder ceased his acts of sexual aggression in order to eat some hot dogs. It was further the testimony of the complainant that when the intruder first appeared at the door of her apartment he identified himself as the man who had helped her put up a sign and that during the preceding August a man had in fact assisted her in posting a notice in the lobby of the apartment building in which she was advertising for cleaning help. The complainant acknowledged that she did not know what it was that the man placed in her anus.

The State called three police officers as witnesses. Officer Hibser testified that he was called to the complainant's apartment in the early morning hours of September 12, 1975. Upon arrival at the apartment he

found the complainant alone, crying, gasping for breath, somewhat incoherent, and her speech rambling. The complainant told him that she had been raped. Approximately one-half hour after his arrival he, in the company of other police officers, took the complainant to the hospital.

Officer Ganda testified that he conducted a search of the complainant's apartment at approximately 3 a.m. He identified a "Pepsi" can as the one he found on a dining room table in the apartment. The can was processed for prints and a latent print was discovered which led to the identification of the defendant when compared to prints on file at the Peoria Police Department. The defendant was subsequently fingerprinted at the county jail and it was determined that the fingerprint on the can was made by the thumb on the defendant's right hand. Officer Ganda also identified other objects found in the apartment, *i.e.*, a United States Treasury check in the sum of $136.90, and the bottom sheet from the complainant's bed which had blood stains and hair on it. The sheet was turned over to Ms. Kienzler of the State of Illinois Crime Laboratory.

Officer Hilst testified that he talked to the defendant at the Peoria Police Department on September 29, 1975, regarding the occurrence involving the complainant, that *Miranda* warnings were given to the defendant and that the defendant initially denied any knowledge of the incidents which concerned the complainant and further denied any acquaintanceship with her. After being informed that his fingerprint was found in the apartment the defendant acknowledged that he had been in the apartment, that he knew the complainant and then recounted his version of the occurrence which commenced at her apartment on the night of September 11, 1975. The defendant's version was substantially the same as that contained in his testimony during his trial and will be later set forth in this opinion.

Ms. Kienzler of the State of Illinois Crime Laboratory testified that she found 16 black Negroid hairs on the bedsheet which was removed from the complainant's apartment, six of which were similar to the defendant's pubic hair and six which were similar to the hair on the defendant's head. She further testified that the technology involved in hair comparisons permits a conclusion confined to similarities but precludes a definite and certain identification.

The final witness for the State was Dr. William Reid, who testified that he was on duty in the emergency room at the St. Francis Hospital located in Peoria during the early morning hours of September 12, 1975, and that he examined the complainant at approximately 4:15 a.m. He testified that the complainant was very hysterical and her complaint was that she had been raped. His examination of the complainant revealed that she had fresh bruises on both breasts, her upper arms and the shoulder area.

Pathologist Angel Gaurie of the St. Francis Hospital, a witness called by

the defendant, testified that an analysis of the "rape smear" taken when the complainant first arrived at the hospital and a rectal smear taken at 5:30 p.m. on the same day failed to show any evidence of sperm.

The defendant, taking the witness stand, testified that on September 11, 1975, he had been drinking in a tavern located in the same building as the complainant's apartment. He first attempted to call a friend living in the building, but when he received no answer he recalled an invitation from the complainant to visit her after he had assisted her in posting a sign in the lobby of the building. He testified that he buzzed the complainant's apartment from the lobby and received a return buzz indicating that he would be admitted so he went upstairs and rang the bell to complainant's apartment. The complainant partially opened the door; he identified himself and waited at the partially opened door while the complainant left to put on some clothing, since she had just gotten out of the bathtub. The complainant returned, unlatched the burglary lock chains and allowed him to come in. He testified that since there was no couch in the apartment he led her to the bed where she was sitting and watching T.V. He said that he and the complainant conversed for an hour and a half to two hours and after making "small talk" he embraced her, kissed her and that he inserted his finger into her sex organ and she became "tensified, frightful and embarrassed." Upon the complainant objecting to his sexual advances he refrained from pursuing the matter but instead attempted to call a friend, but on receiving no answer he asked the complainant for cab fare. He testified that she gave him a $10 bill and told him to "go ahead and keep it" when he stated that it was too much money, and, upon leaving, the complainant gave him her phone number and told him to call her the next evening. He testified that, during the evening, he ate a hot dog and drank some Pepsi or root beer, that he never threatened her, used force or compelled her to submit to any of the sexual acts testified to by the complainant, nor did he take any property from the apartment except the $10 which had been given to him. On cross-examination he admitted that when he first talked to Officer Hilst he denied being at the complainant's apartment until he was told that his fingerprints were found there.

Over objection the State read to the jury and introduced into evidence a certified copy of defendant's prior conviction for armed robbery in the year 1968.

We have set forth with considerable detail the testimony of the witnesses at the defendant's trial, sordid and revolting as it may be. However, such testimony could not be permitted to remain buried in the record since it has a distinct bearing upon the determination of one or more issues raised in this appeal.

The defendant assigns as reversible error the trial court's refusal to rule

prior to trial on his motion to suppress the use of his previous armed robbery conviction for impeachment purposes.

On December 11, 1975, at a pretrial motion session, counsel for the defendant argued that the prayer of a written motion to suppress use of the defendant's prior conviction of the offense of armed robbery should be granted. The court reserved ruling on this motion with the understanding that a ruling be made when the matter "comes up."

This court was recently confronted with this issue and resolved it adversely to the defendant. (*People v. Spicer* (1976), 44 Ill. App. 3d 200, 358 N.E.2d 104.) In *Spicer* we had a situation that differs from that in the instant case in that the trial court prior to trial did deny the motion to suppress evidence of a prior conviction, but without prejudice and with the understanding that the motion would be reconsidered in the event the defendant elected to testify.

■■ We believe that the case of *Spicer* is controlling in the instant case because in each case the effect of the trial court's action was to place the defendant in a position where he had to make a determination as to whether he should testify without the benefit of knowing in advance what the trial court's ruling would be in regard to the evidence of a previous conviction. We are of the opinion that in most instances the better practice would be for the trial court to make a definitive ruling on a pretrial motion to suppress evidence of a prior conviction, yet a failure to do so does not constitute reversible error.

■■■ The defendant had a criminal record dating back to the year 1961; however, the particular conviction which he sought to exclude from evidence was for armed robbery which occurred in the year 1968. It is well settled that a defendant's previous conviction can be disclosed during his trial for impeachment purposes within 10 years following the conviction, unless the court determines that the probative value of impeachment is outweighed by prejudice to the defendant and this determination lies within the discretion of the trial judge. (See *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) In the instant case we fail to find an abuse of discretion by the trial court in refusing to rule in advance of trial on the defendant's motion to suppress and the later ruling to admit the defendant's prior conviction for armed robbery during the course of the trial.

■■ The defendant next assigns as reversible error the trial court's refusal to grant his motion to suppress the statement he made to Officer Hilst of the Peoria Police Department. The record supports a finding that the defendant was advised of his constitutional rights as required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The defendant asserts that his statement was obtained after he had requested a lawyer and he had been informed that if he talked nothing

would happen to him. The evidence does not support these assertions but on the contrary it is clear that after being admonished as to his rights the defendant voluntarily stated that he knew nothing about the incident concerning the complainants but when informed that his fingerprints were found in her apartment he promptly reneged on his statement of having no knowledge of the incident or acquaintanceship with the complainant and then gave to Officer Hilst a statement substantially similar to that which he gave on direct examination during his trial. Whether a statement is voluntarily given depends upon the totality of the circumstances. The test is whether it has been made freely, voluntarily and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he made the statement. (See *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601.) In considering the totality of the circumstances surrounding the defendant's statement it is quite evident that he was admonished as to his rights and that he immediately made a flat denial of any relationship with the complainant or the incident in which she was involved. When informed that his fingerprints were found in the apartment and realizing his flat denial of involvement would not, as we say in the vernacular, "hold water," the defendant again promptly and we deem voluntarily came forth with another statement.

■■ Assuming arguendo that the defendant's second statement was not voluntary, we fail to see how it adversely affected him, for his trial testimony was the same as that contained in the contested statement. It was in effect his theory of the case, his defense, to-wit, consent by the victim.

■■ The defendant contends that the State committed reversible error during closing argument by claiming that he was "trapped" into testifying as he did because he had previously given a similar version to the police. It should be noted that no objection was made by the defendant to this statement made by the State and which he now challenges in this appeal. Unless such a statement is so prejudicial and inflammatory as to deprive the defendant of a fair trial the conviction will not be reversed on appeal. (See *People v. Goins* (1976), 42 Ill. App. 3d 76, 355 N.E.2d 321.) We are not of the opinion that the State's closing argument falls within the prejudicial and inflammatory category that would preclude the defendant from receiving a fair trial. In summary, we conclude that the trial court properly denied the defendant's motion to suppress his pretrial statement to Officer Hilst and that the closing argument presented by the State was not improper.

It is the defendant's next contention that he was denied the full right of cross-examination of the chief witness against him (the complainant) by

prohibiting a line of questioning concerning the complainant's prior refusal to discuss the case with his counsel.

During the course of the cross-examination of the complainant the following colloquy ensued:

"Q. Now, Miss Wavering, do you remember receiving a telephone call from myself at approximately eleven a.m. on Saturday, December 6, 1975?

A. I don't know what time it was.

Q. But you did receive such a call, is that correct?

A. Yes. Yes.

Q. During that call I indicated to you that I had been appointed as the attorney for James Murdock, is that correct?

A. Yes.

Q. And I explained that I, as his attorney, would like to talk to you about this case, is that also correct?

A. Yes.

Q. Now, we had a short conversation on the telephone concerning that subject, is that true?

A. Yes.

Q. During that conversation you at first indicated that you would not talk to me, is that correct?

A. Um-hum, yes.

Q. And then you indicated that you would be willing to talk to me with your parents present?

A. Yes.

Q. And I told you, didn't I, that that was agreeable with me, that I would be happy—."

■■ This line of questioning was objected to as irrelevant and prejudicial and the trial court sustained the State's objection. We do not agree with the defendant that error was committed when this line of questioning was terminated. Counsel for the defendant adduced testimony that the complainant would not talk to him prior to trial. If this information had any effect whatsoever it could only be beneficial to the defendant; however, be that as it may, it is well settled that the latitude allowed in the cross-examination of a witness rests in the discretion of the trial court. *People v. Latimore* (1975), 33 Ill. App. 3d 812, 342 N.E.2d 209; *People v. Hubbard* (1973), 55 Ill. 2d 142, 302 N.E.2d 609.

During the trial the defendant's counsel was permitted to cross-examine the complainant extensively in regard to all aspects of the incidents which resulted in the defendant being charged with various criminal offenses. It was well established that being blind she was unable to identify the defendant, that she had difficulty in describing with biological accuracy

the alleged acts which were committed on her person. The jury had the opportunity to observe her demeanor. The defendant was not prejudiced, and hence the court did not abuse its discretion in curtailing the cross-examination of the complainant on a collateral matter which could in no way assist the jury in determining whether the defendant was innocent or guilty.

The defendant raises the issue that he was not found guilty beyond reasonable doubt for deviate sexual assault by anal intercourse as charged in count I of the indictment which was returned against him.

Count I of the indictment charged that the defendant "committed the offense of deviate sexual assault in that he did, being a person of the age of 14 years and upwards, knowingly by threat of force, compel Janet Wavering to submit to an act of deviate sexual conduct, in that he inserted his penis in the anus of Janet Wavering, in violation of Paragraph 11—3a, Chapter 38, Illinois Revised Statutes."

Count II of the indictment charged that the defendant "committed the offense of deviate sexual assault in that he did, being a person of the age of 14 years and upwards, knowingly by threat of force compel Janet Wavering to submit to an act of deviate sexual conduct, in that he touched his mouth to the sex organ of Janet Wavering, in violation of Paragraph 11—3a, Chapter 38, Illinois Revised Statutes."

■■ The defendant does not challenge the jury's finding of guilty on count II but challenges the finding of guilty as to count I on the grounds that there was a total failure of evidence adduced during his trial to prove the conduct alleged in said count. With this contention of the defendant we agree. No useful purpose would be served by setting forth the testimony of the complainant in an effort to find in said testimony statements which would support the charge contained in count I of the indictment. Such testimony as there was constituted an offensive narrative, and we do not care to record it further. It is obvious that because of the complainant's highly distraught and emotional state of mind she was unable to provide testimony which would in any way support the charge contained in count I of the indictment.

The State argues that it is not necessary that witnesses describe events with technical accuracy where it is clear what the testimony at issue refers to and cites as authority for this rule the case of *People v. Bradford* (1975), 62 Ill. 2d 21, 338 N.E.2d 182. In *Bradford* the complainant described a deviate sexual act with the generally understood words of vulgarity rather than with the phrase "oral copulation," the term which had been used in the criminal complaint. The reviewing court held that the use of the vulgarity was sufficient to describe the act and affirmed the conviction of the defendant. In the instant case we do not have testimony, vulgar, technical or in any form, that supports the charge in count I. Nor does the

medical testimony received during the trial support the count I charge, and therefore the judgment of guilty as to the charge in count I of the indictment should be reversed and the sentence imposed thereon vacated.

■■ The defendant further argues that he should stand free of the conviction of the robbery charge. The defendant was tried in January 1976, and the jury found him guilty of the offense of robbery and two offenses of deviate sexual assault. On February 25, 1976, the trial judge "reserved judgment" on the robbery conviction and imposed no sentence for this crime. We agree with defendant that the robbery conviction should be vacated. Public policy does not allow or permit an indefinite or undue postponement of judgment and sentencing of a person convicted of a crime. (*People ex rel. Rudin v. Ruddell* (1970), 46 Ill. 2d 248, 263 N.E.2d 48; *People ex rel. Houston v. Frye* (1966), 35 Ill. 2d 591, 221 N.E.2d 287.) We find no good cause or reasonable grounds for the trial court's "reservation of Judgment" on the robbery charge and hence the trial court has lost jurisdiction to enter judgment and impose sentence for the crime of robbery and therefore the defendant's conviction for the offense of robbery is vacated.

■■ Lastly the defendant claims that the sentence imposed, to-wit, two concurrent terms of not less than 40 years nor more than 120 years in the penitentiary for the deviate sexual assault charges, is excessive. We have reversed the judgment of guilty and sentence imposed thereon for the deviate sexual assault charge contained in count I of the indictment. There remains a sentence of not less than 40 nor more than 120 years in the penitentiary for the deviate sexual assault offense charged in count II of the indictment. Is this sentence excessive? We believe not. The defendant held a blind woman as a hostage for approximately five hours during which time he abused her, committed indignities upon her person and provided her with a night of terror. The defendant has a criminal record dating back to 1961. He has committed the offenses of burglary, theft, possession of stolen property, resisting arrest, disturbing the peace, criminal damage to property and armed robbery.

We are of the opinion that the sentence imposed is justified as being consistent with the nature and circumstances of the offense and the history and character of the defendant. It is also within the statutory limits and does not violate fundamental law. See *People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673.

For the reasons set forth the defendant's conviction for the crime of deviate sexual assault as charged in count I of the indictment is reversed. His conviction for the crime of robbery upon which judgment was reserved by the trial court is ordered vacated and his conviction for the crime of deviate sexual assault as charged in count II of the indictment

and sentence of not less than 40 nor more than 120 years in the penitentiary imposed thereon is affirmed.

Affirmed in part and reversed in part and vacated in part.

STENGEL, P. J., concurs.

Mr. JUSTICE STOUDER, concurring in part and dissenting in part:
I join with my colleagues in affirming the judgment of conviction of defendant, James Murdock, on one charge of deviate sexual assault and reversing the second judgment of conviction. However, I believe the sentence imposed of not less than 40 nor more than 120 years in the penitentiary is excessive and the sentence should either be reduced or the cause should be remanded for reconsideration of the sentence.

The offense for which the defendant stands convicted is serious, and the record fails to reflect any mitigating circumstances favorable to the defendant. However, the sentence imposed in this case appears to be the result of one of our sentencing dilemmas. For various reasons trial courts are often inclined to impose "big number" sentences on the theory that courts of review will act appropriately if the sentence is excessive. Courts of review on the other hand, give great deference to the sentence imposed by the trial court and, consequently, realistic review of a sentence is fraught with many problems.

It seems to me that minimum sentences such as the one imposed in the instant case are and should be reserved for those cases where the offense is so serious or so aggravated that it is at the top of the scale in considering the relevant nature of the misconduct involved. Without in any way intending to minimize the seriousness of the offense involved in this case, the record fails to demonstrate brutality, excess force or extraordinary physical violence which could have accompanied the offense. Instead, we have little evidence of physical violence, no forceful attempt at intercourse and no physical injury. Under these circumstances it seems to me that the record does not disclose the aggravated occurrence which should exist before a sentence of the magnitude of the sentence imposed in this case is warranted.